UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DINOSAUR MERCHANT BANK LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  1:19 CV 84 ACL |
| ) | |
| BANCSERVICES INTERNATIONAL LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant/Counterclaim Plaintiff Bancservices International, LLC's ("BSI") Motion for Leave to Amend Counterclaim (Doc. 43), and Plaintiff Dinosaur Merchant Bank Limited's ("Dinosaur") Motion to Dismiss BSI's proposed Amended Counterclaim (Doc. 45).  Also pending is Dinosaur's Motion for Attorney Fees.  (Doc. 36.)

**I.      Background**

The factual background of this case is set out in detail in the Court's December 6, 2019 Order, and will be repeated here only to the extent necessary.  (Doc. No. 33.)  Plaintiff Dinosaur asserted claims of breach of contract, breach of good faith and fair dealing, and conversion based on BSI's withholding of $3,469,718.26 of funds from a failed transaction ("Transaction") for the purchase of crude oil.  The Transaction was initiated by Dinosaur under an International Payment Services Agreement ("IPSA") executed between the parties.   In short, Dinosaur's client Barnett Capital Bank requested the transfer of funds for the purpose of lifting a Curacao Court-imposed attachment and enabling Tipco Asphalt Public Company Limited ("Tipco"), a Thai company, to purchase crude oil from Petroleos de Venezuela, S.A. ("PdVSA"), a Venezuelan company.

BSI filed a Counterclaim, in which it asserted claims of fraud, breach of contract, and indemnity related to the Transaction.  The crux of the Counterclaim was that Dinosaur failed to disclose information that would have raised compliance concerns and BSI would not have agreed to the Transaction had this information been disclosed.

On December 6, 2019, the Court granted Dinosaur's Motion for Judgment on the Pleadings.  The Court held that BSI was in breach of the IPSA for retaining the $3,469,718.26, as there was no provision in the IPSA allowing for the retention of funds from failed transactions.  The Court further found that BSI failed to state a claim for fraud, breach of contract, or indemnity.

BSI requested that the Court reconsider its December 6, 2019 Memorandum and Order with respect to BSI's Counterclaim for fraud and indemnity.  On January 8, 2020, the Court granted BSI's Motion in part, in that BSI was given leave to file a proposed amended complaint.  (Doc. 41.)  The parties were directed to brief the issue of whether the proposed amended complaint cured the deficiencies found by the Court.

On January 15, 2020, BSI filed its Proposed Amended Counterclaim (Doc. 43-2) and Memorandum in Support (Doc. 43).  The proposed Amended Counterclaim asserts claims of fraud (Count I), negligent misrepresentation (Count II), and indemnity (Count III).

In response, Dinosaur filed a Motion to Dismiss the Proposed Amended Complaint.  (Doc. 45).  Dinosaur argues that BSI's fraud claim fails to satisfy pleading requirements; BSI was not given permission to plead negligent representation, and this claim fails for the same reasons as the fraud claim; and BSI's indemnity claim fails because BSI has not pled a litigable fraud or negligent misrepresentation claim.  Dinosaur further requests that the Court enter

2

judgment on its breach of contract claim immediately, and direct BSI to satisfy that judgment before proceeding on the claims set forth in the Counterclaim.

BSI filed a Reply, in which it argues Dinosaur is attempting to deprive BSI of basic discovery by relying on an exacting pleading standard that goes beyond the requirements of Federal Rule of Procedure 9.  (Doc. 46.)  BSI contends that a review of the Proposed Amended Counterclaim reveals allegations that plainly state an actionable claim.  Additionally, BSI argues that this Court lacks the authority to require BSI to satisfy a judgment before proceeding on the Counterclaim.

**II.     Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  A complaint must be dismissed for failure to state a claim if it does not plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 560 (2007).  A petitioner need not provide specific facts to support his allegations, *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level."  *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008), *cert. denied,* 129 S.Ct. 222 (2008) (quoting *Twombly,* 550 U.S. at 555-56 & n. 3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner.  *Scheuer v. Rhodes,* 416 U.S. 232 (1974); *Kottschade v.*

*City of Rochester,* 319 F.3d 1038, 1040 (8th Cir. 2003). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content...allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole v. Homier Dist. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir. 2005)).

**III.    BSI's Proposed Amended Counterclaim**

    **A.    Fraud**

In the original Counterclaim, the substance of BSI's fraud claim was as follows: Dinosaur "knew that the Transaction involved a party or parties that may cause the Transaction to be rejected." (Doc. 10 at p. 4.) BSI clarified in its Response to Dinosaur's Motion for Judgment on the pleadings that Dinosaur "failed to disclose the true parties to the transaction and the involvement of a Panama law firm to circumvent the Venezuelan court order that required payment through a different escrow agent." (Do. 31 at p. 13.)

The Court concluded that BSI's allegations did not state a claim for fraud, as the documents Dinosaur provided to BSI on October 30, 2018—which were found to be embraced by the pleadings—explicitly described the role of the Panamanian law firm, De Jesus & De Jesus. Specifically, De Jesus & De Jesus was identified as Escrow Agent between PDVSA and Tipco. The documents did not suggest that De Jesus & De Jesus was an escrow agent appointed by a court order.

The Court, in its order reconsidering the grant of judgment on the pleadings, granted BSI's request for leave to amend its Counterclaim to state its claim for fraud and indemnity with

4

more particularity "related to the nondisclosure of the true court-appointed escrow agent for the transaction." (Doc. 35 at p. 6.)

In the Proposed Amended Counterclaim, BSI provides approximately four pages of facts and exposition in support of its fraud claim.  BSI first alleges that, in order to induce BSI to facilitate the Transaction, Dinosaur represented that Panamanian law firm DeJesus & DeJesus "was the escrow agent approved by the Curacao Court for the Transaction that would enable the Court-imposed attachment to be lifted in order to facilitate the transfer of the crude oil." (Doc. 43-2 p. 4.)  BSI contends that Dinosaur made this representation through an email and supporting documentation, including a letter from DeJesus & DeJesus and a transaction summary.  BSI describes the supporting documentation as follows:

> The letter indicates that DeJesus & DeJesus was hired to ensure compliance with legal requirements necessary to give effect to the sale and payment to the Court. The Transaction Summary, Exhibit C, listed DeJesus as the "Original Remiter" and the "Beneficiary" as Gemeenschappelijk Hof Van Justitie, which is the Curacao Court.  The letter from DeJesus and DeJesus and the Transaction summary, when read together as intended by Dinosaur, was a representation by Dinosaur that DeJesus was acting as the Court-approved escrow agent for the entire $23,468,931.86 transaction ("Affirmative Misrepresentation").

*Id.* BSI alleges that Dinosaur's "affirmative misrepresentation" that DeJesus & DeJesus was the court-approved escrow agent was false, and Dinosaur knew it was false.

In the alternative, BSI alleges that Dinosaur "knowingly and recklessly failed to disclose (1) the true Court-approved escrow agent for the Transaction (Pennings Foundation); (2) the existence of the Pennings Escrow Agreement whereby the crude oil shipment was already under contract for sale involving another escrow agent; and (3) that Tipco, pursuant to the Pennings Escrow Agreement, had previously transferred funds for the purchase of the oil to Pennings' MCB bank account and that transaction had been rejected for compliance issues (collectively, the "Nondisclosures").  Dinosaur had knowledge of the Nondisclosures." *Id.* at p. 4-5.  BSI

5

contends that Dinosaur had superior knowledge about the facts and circumstances of the Transaction, in that it was Dinosaur's client that arranged for the Transaction and had actual knowledge of the Curacao-Court attachment.  The facts and circumstances of the Transaction and the Nondisclosures were beyond the reach of BSI.  BSI alleges that the Nondisclosures were material to BSI's decision to accept the Transaction and BSI would not have "knowingly been involved in a transaction that involved questionable transactions with a Panamanian law firm working on behalf of Venezuelan interests if the escrow agent had not been approved by the Court." *Id.* at p. 6.  BSI alleges it was damaged as a result of the misrepresentations and Nondisclosures in that it lost its preferred exchange rate.

Dinosaur first argues that the only purported "affirmative misrepresentation" in the proposed amended counterclaim is the one already rejected by this Court.  Dinosaur next contends that BSI's other assertion, that Dinosaur knew and failed to disclose in October 2018 that the Pennings Foundation was the "true" court-approved Curacao Court escrow agent, suffers from a multitude of "speculation and conclusory allegations."

The elements of a fraud claim are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007) (en banc).  In a case of concealment or nondisclosure, "a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." *Id.*

6

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet Rule 9(b) requirements, a pleading must include "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). "The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id*. Furthermore, the overarching principles of notice pleading dictate that a plaintiff does not need to plead fraud "with complete insight before discovery is complete." *Gunderson v. ADM Investor Servs., Inc.*, 230 F.3d 1363 (table), 2000 WL 1154423, at *3 (8th Cir. 2000) (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir. 1998)). As a result, Rule 9(b) does not require a plaintiff to set out specific facts concerning matters that are likely solely known by the defendant. *See, e.g., Abels*, 259 F.3d at 921. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* at 892.

Here, the Court finds that BSI has pled sufficient facts to state a fraud claim for relief that is facially plausible. Additionally, BSI has pled sufficient facts to meet Rule 9(b) requirements that a pleading must include "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby."

The Proposed Amended Counterclaim alleges that Dinosaur failed to disclose three facts regarding the Transaction. First, BSI alleges that Dinosaur failed to disclose that the Curacao Court had approved the Pennings Foundation as the escrow agent to facilitate the Transaction

7

and lift the court-imposed attachment.  BSI contends that, had BSI known the Pennings Foundation was the court-approved escrow agent to lift the court's attachment on the subject oil, BSI never would have agreed to the Transaction.  Second, BSI alleges that Dinosaur failed to disclose that the oil was already under contract for sale under a different escrow agreement involving the Pennings Foundation.  BSI argues that it never would have approved the Transaction if it had known this, due to concerns over the validity of the purchase of the oil in light of U.S. sanctions involving Venezuelan nationals.  Finally, BSI alleges that Dinosaur failed to disclose that an attempt for the purchase of the oil had been previously rejected by a different bank for "compliance concerns."  BSI asserts that had it known that a prior attempt to facilitate a substantially similar transaction for the purchase of the same oil had been rejected for compliance concerns, BSI would not have initiated the Transaction due to concerns that it would experience the same compliance issues.  None of these facts were included in the original Counterclaim and accepting the allegations as true, they support a claim for fraudulent nondisclosure.

With regard to BSI's alleged "affirmative misrepresentation," however, the Court agrees with Dinosaur that this is the same claim the Court has previously rejected.  BSI, tacitly conceding the absence of a direct affirmative misrepresentation, argues that the claim must be considered in conjunction with the alleged Nondisclosures.  The alleged Nondisclosures support BSI's fraudulent nondisclosure claim, but BSI's allegations are too attenuated to state a plausible claim for an affirmative misrepresentation.  Nothing in the documents Dinosaur provided to BSI suggest that De Jesus and De Jesus was the court-appointed escrow agent.

Dinosaur next argues that the Counterclaim does not sufficiently plead Dinosaur's knowledge of the Pennings Agreement at the time of the October 30, 2018, payment request, or

8

at any time prior to the termination of the payment request. Dinosaur also notes that the Proposed Amended Counterclaim provides that the Curacao Court did not recognize the Pennings Foundation as an escrow agent until November 27, 2018, which was after Dinosaur initiated the instant Transaction.

As set out above, "malice, intent, *knowledge*, and other conditions of a person's mind may be alleged generally." *Abels,* 259 F.3d at 920 (emphasis added). Additionally, "[t]he sufficiency of a pleading under Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *McDonnell Douglas Corp. v. SCI Technology, Inc.,* 933 F. Supp. 822, 825 (E.D. Mo. 1996) (internal citations omitted).

BSI alleges that Dinosaur "knowingly and recklessly" failed to disclose the facts surrounding the Nondisclosures. BSI further alleges that Dinosaur had superior knowledge about the facts and circumstances of the Transaction in that it was Dinosaur's clients that arranged for the Transaction and had actual knowledge of the Curacao-Court attachment. Under the appropriate standards, which merely require that conditions of a person's mind be alleged generally, the undersigned finds that BSI has plausibly alleged the knowledge element. *See Nestle Purina PetCare Co. v. Blue Buffalo Co*., No. 4:14 CV 859 RWS, 2015 WL 1782661, at *11 (E.D. Mo. Apr. 20, 2015) (finding Rule 9 satisfied by "quite general" allegations that defendants "knew that their published statements were false, or acted in reckless disregard [or negligence] of the truth or falsity of the statements.").

With regard to the timing of the Curacao Court's approval of the Pennings Foundation as escrow agent, the Proposed Amended Counterclaim alleges that the Pennings Escrow Agreement

9

was *entered into* on September 19, 2018, over a month before Dinosaur submitted the payment order to BSI in this case. As such, even though the Curacao Court did not *confirm the validity of* the Pennings Escrow Agreement until its November 27, 2018 decision, it is still plausible that Dinosaur was aware of the Agreement when it submitted the payment order to BSI on October 30, 2018.

In Dinosaur's remaining arguments, it claims that the Proposed Amended Counterclaim is impermissibly speculative and conclusory in the following respects: BSI states it does not know why the Transaction was rejected and therefore has no basis to assert that the escrow agent issue was relevant to the rejection; BSI, as a regulated banking services company, had an independent obligation to satisfy itself as to whether there was anything amiss in the transaction; and BSI presents no basis for the conclusion that whatever financial woes may have befallen BSI had anything to do with Dinosaur or the failed Transaction.

Although Dinosaur raises many valid questions regarding BSI's case, the answers to those questions are more appropriately addressed through discovery channels. The Transaction involved multiple international entities and complicated issues of international law. As such, it is reasonable that BSI would not have all the information related to the Transaction's failure prior to discovery. Additionally, the specific reason why the Transaction was rejected is not dispositive to BSI's claim that BSI would not have agreed to the Transaction had Dinosaur disclosed the relevant information.

With regard to the issue of whether it was reasonable for BSI to rely on Dinosaur's representations in light of its duty to investigate, this issue is not properly considered in a motion to dismiss. *See, e.g.*, *Grove v. Principal Mut. Life. Ins. Co.*, 14 F. Supp. 2d 1101, 1111 (S.D. Iowa 1998) (deciding that justifiable reliance "goes beyond the scope of a motion to dismiss");

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 132 (Mo. 2010) ("Generally, whether a party has justifiably relied on a misrepresentation is an issue of fact for the jury to decide."). BSI's allegation that it reasonably relied upon Dinosaur's misrepresentations is sufficient at this stage.

In sum, even applying the heightened pleading requirements of Rule 9(b), the Court concludes that Dinosaur has sufficient notice of the factual basis of BSI's fraud claim to respond to the Counterclaim. The Court further finds that BSI's allegations of fraudulent nondisclosures are sufficient to survive Dinosaur's motion to dismiss Count I. Whether BSI can ultimately prove its allegations, including its damages, are questions to be addressed after discovery is conducted.

      **B.**      **Negligent Misrepresentation**

Count II of the Proposed Amended Complaint asserts a claim of negligent misrepresentation. BSI alleges that, after learning of the attachment on the crude oil, Dinosaur took no further action to discover whether the requested Transaction utilizing De Jesus and De Jesus would be approved by the Curacao Court to lift the attachment. BSI claims that Dinosaur therefore failed to discover that the Pennings Foundation was the court-approved escrow agent for the Transaction instead of DeJesus and De Jesus, failed to discover the existence of the Pennings Escrow Agreement, and further failed to discover the prior rejection of an attempted transfer for the crude oil (*i.e.*, the Nondisclosures). BSI claims that Dinosaur's Nondisclosures were provided to BSI in the course of Dinosaur's business in order to facilitate the Transaction. BSI alleges that it justifiably relied upon Dinosaur's superior knowledge of the Transaction to relay accurate information.

Dinosaur first argues that BSI's negligent misrepresentation claim should be denied because BSI did not seek leave to add this claim. BSI sought leave to amend its Counterclaim to "state its claim for fraud and indemnity with more particularity related to the nondisclosure of the true court-appointed escrow agent for the transaction." (Do. 35 at p. 6.) The Court granted BSI's request, in order to give BSI an opportunity to cure the deficiencies set out in the Order— the lack of specificity provided in BSI's claims. Although BSI did not specifically request leave to add a negligent misrepresentation claim, this claim is based on the same transaction and facts as BSI's fraud claim. Given the pronouncement of Rule 15 that "[t]he court should freely give leave [for a party to amend its pleadings] when justice so requires," the Court declines to dismiss BSI's negligent misrepresentation on this basis. Fed. R. Civ. P. 15(a)(2).

Dinosaur next argues that BSI's negligent misrepresentation claim fails for the same reason as its fraud claim: it offers unsupported and conclusory allegations.

To state a claim for negligent misrepresentation, a plaintiff must show: "(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 134 (Mo. 2010) (citation omitted). Under Missouri law, "[a] claim for negligent misrepresentation, unlike one for fraud, does not involve a question of intent." *Renaissance Leasing, LLC*, 322 S.W.3d at 134; *see also Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (finding that a securities claim pleaded separately from any fraud claims, including only allegations of innocent or negligent

12

misrepresentations and omissions, is governed by the notice pleading standards of Rule 8(a), not Rule 9(b)). Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The Court finds the allegations contained in Count II are sufficient to comply with the pleading requirements of Rule 8(a). This claim is based upon the same facts as BSI's fraud claim, which the Court has found states a plausible claim for relief. Dinosaur's alleged Nondisclosures were provided in the course of business to facilitate the Transaction. Dinosaur's request to dismiss Count II for failure to state a claim is denied.

**C.     Indemnity**

In Count III, BSI asserts that the IPSA requires Dinosaur to indemnify BSI for damages and attorney's fees incurred as a result of Dinosaur's fraud in relation to the Transaction.

Dinosaur argues that BSI's indemnity claim fails, as it relies on the viability of its fraud and negligent misrepresentation claims. Because the Court has found that BSI has stated plausible fraud and negligent representation claims, Dinosaur's motion to dismiss BSI's indemnity claim is denied.

**IV.     Entry of Judgment**

Dinosaur finally argues that, even if the Court does not dismiss BSI's Proposed Amended Counterclaim, it should enter final judgment on Dinosaur's breach of contract claim in accordance with the December 6, 2019 Order. Dinosaur contends that it is plainly entitled to the $3,469,718.26 that BSI wrongfully maintains, as well as pre-judgment and post-judgment interest and attorneys' fees, and the expenses expended to obtain the return of its funds. Dinosaur further argues that the Court should stay litigation of BSI's counterclaim until BSI has, "at a minimum, returned to Dinosaur the funds wrongfully withheld from Dinosaur, as well as

13

the interest on the funds lost to Dinosaur as a result of the wrongful withholding;" and "compel BSI to deposit with its registry at least $2,602,288.88, to ensure compliance with its December 6, 2019 Order."  (Doc. 44 at p. 15.)

In response, BSI argues that Dinosaur has not alleged any justification for pre-judgment attachment and no such showing has been made.  BSI contends that the only relief Dinosaur is entitled to on its claim for breach of contract is the entry of a judgment.  Even if there were a final judgment, BSI states that a judgment is enforced through execution on that judgment under Rules 64 and 69.  BSI argues that Dinosaur cites no law that would permit a judgment's satisfaction to be used as a condition precedent to the defendant's ability to pursue a separate claim.

Rule 54(b) allows the court to enter final judgment on some but not all of the claims in a lawsuit "only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  The Rule "provide[s] a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on all the claims in the case."  *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956).

The Eighth Circuit has outlined a two-step analysis a district court must undertake when deciding whether to grant Rule 54(b) certification.  The court must first determine that it is dealing with a final judgment in the sense that it is an ultimate disposition of an individual claim. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1118 (8th Cir. 2011).  Second, in determining that there is no just reason for delay, the district court must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals.  *Id.*  Certification should be granted only if there exists some

14

danger of hardship or injustice through delay which would be alleviated by immediate appeal. *Williams v. Cty. of Dakota, Neb.*, 687 F.3d 1064, 1067-68 (8th Cir. 2012) (internal citations and quotations omitted).

Applying these considerations, the Court finds that there is no just reason to delay the entry of final judgment on Dinosaur's breach of contract claim.  First, the grant of a motion for judgment on the pleadings constitutes final judgment on the merits of the controversy within the meaning of Rule 54.  *Weger v. City of Ladue,* 2004 WL 3651669, at *1-2 (E.D. Mo. Dec. 30, 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1372 (1990)).  As such, the first requirement is satisfied in this case.

Second, equitable factors weigh in favor of entering judgment now.  Dinosaur's claim was limited to determining BSI's right under the IPSA to retain the funds from the failed Transaction.  Although BSI's Counterclaim relates to the same Transaction, it involves different legal theories and additional facts.  The Court has found that BSI breached the IPSA for unilaterally deciding to retain the $3,469,718.26, and that BSI would be directed to return the entrusted funds to Dinosaur along with interest, costs, and attorney's fees.  Dinosaur contends that BSI should not be permitted to further delay the return of the wrongfully withheld funds, and should be directed to pay interest as a result of the delay.   The Supreme Court has held that a district court may properly consider a plaintiff's monetary loss as one of the equities.  *See Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 11 (1980).  For these reasons, the Court finds the requirements of Rule 54(b) have been met, and that there is no just reason for delay.

The undersigned, however, will deny Dinosaur's request to require BSI to deposit $2,602,288.88 with the Court, or to stay proceedings on the Counterclaim pending BSI's satisfaction of the judgment.  Dinosaur cites no authority that would permit the Court to grant

15

this relief.  BSI has not violated an order of this Court; rather, the Court has not yet entered a judgment on Dinosaur's Complaint.  Should Dinosaur seek to enforce a judgment in the future, the proper means for a party to enforce compliance with a money judgment is to seek a writ of execution under Rule 69.  *See El–Tabech v. Clarke,* 616 F.3d 834, 839 (8th Cir. 2010).

## Conclusion

The Proposed Amended Counterclaim cures the deficiencies set out in the Court's December 6, 2019 Order.  The Court will, therefore, grant BSI leave to file the Proposed Amended Counterclaim, and deny Dinosaur's Motion to Dismiss.  The Court will set a scheduling conference regarding BSI's Counterclaim at a later date.

Accordingly,

**IT IS HEREBY ORDERED** that BSI's Motion for Leave to File an Amended Counterclaim (Doc. 43) is **granted**, and the Clerk of Court shall file the Amended Counterclaim (Doc. 43-2.)

**IT IS FURTHER ORDERED** that Dinosaur's Motion to Dismiss (Doc. 45) is **denied.**

**IT IS FURTHER ORDERED** that Dinosaur's request for the entry of final judgment on Dinosaur's Complaint (Doc. 45) is **granted in part**, in that a separate judgment will be entered consistent with this Memorandum and Order.  All other relief requested by Dinosaur is **denied**.

**IT IS FURTHER ORDERED** that BSI shall file a Response to Dinosaur's Motion for Attorney Fees (Doc. 36) no later than (21 days) from the date of this Order.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of April, 2020.