UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DINOSAUR MERCHANT BANK LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  1:19 CV 84 ACL |
| ) | |
| BANCSERVICES INTERNATIONAL LLC, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Dinosaur Merchant Bank Limited's ("Dinosaur") Motion for Award of Attorneys' Fees and Costs.  (Doc. 36.)  There is a wide expanse between the parties' assessment of a reasonable fee for Dinosaur's successful Motion for Judgment on the Pleadings.  Dinosaur requests $235,034.50 for attorneys' fees while Defendant Bancservices International, LLC ("BSI") argues that $20,400 is reasonable.

**I.     Background**

In its Complaint, Dinosaur asserted claims of breach of contract, breach of good faith and fair dealing, and conversion based on BSI withholding of $3,469,718.26 of funds from a failed transaction ("Transaction").  The Transaction was initiated under an International Payment Services Agreement ("IPSA") executed between the parties.  BSI filed a Counterclaim, in which it asserted claims of fraud, breach of contract, and indemnity related to the Transaction.

On December 6, 2019, the Court granted Dinosaur's Motion for Judgment on the Pleadings. (Doc. 33.)  The Court held that BSI was in breach of the IPSA for retaining the $3,469,718.26.  The Court further found that BSI failed to state a claim for fraud, breach of contract, or indemnity.

BSI filed a Motion to Reconsider the Memorandum and Order with respect to BSI's Counterclaim for fraud and indemnity. The Court granted BSI's Motion in part, in that it permitted BSI to file a proposed amended counterclaim. (Doc. 41.) On April 17, 2020, the Court found that BSI's Proposed Amended Counterclaim cured the deficiencies set out in the December 6, 2019 Order and denied Dinosaur's Motion to Dismiss. (Doc. 47.) The Court also granted Dinosaur's request for the entry of final judgment on Dinosaur's breach of contract claim pursuant to Federal Rule of Civil Procedure 54(b). Judgment was entered in favor of Dinosaur in the amount of $3,469,718.26 on Dinosaur's Complaint, plus costs and prejudgment interest. (Doc. 49.) The Judgment further provided Dinosaur is entitled to "an award of reasonable attorneys' fees and expenses, in an amount to be determined at a later date." *Id.*

Dinosaur seeks an award of $113,867.50 in attorneys' fees for Lewis Baach Kaufmann Middlemiss pllc ("LBKM"); an award of $104,952 in attorneys' fees for Dentons US LLP ("Dentons"); and costs in the amount of $716. (Doc. 36.) Dinosaur also requests costs associated with its Motion, which it estimates will total $16,215 (including $13,140 from LBKM and $3,075 from Dentons). Dinosaur argues that it is contractually entitled to its legal fees and costs under the terms of the IPSA. Dinosaur further claims that it is entitled to recover fees for hours spent addressing the resolution of the Complaint, as well as the Counterclaim. Finally, Dinosaur requests an award for prejudgment interest under Mo. Rev. Stat. § 408.020.

BSI filed a Response in Opposition to Dinosaur's Motion. (Doc. 57.) BSI first argues that Dinosaur's Motion should be denied because Dinosaur cannot be found to be the prevailing party until BSI's counterclaims are fully litigated. Dinosaur next contends that, should Dinosaur be entitled to fees, the requested fees are excessive and unreasonable. Dinosaur requests that the Court instead award fees in the amount of $20,400.

Dinosaur filed a Reply, in which it provides further argument in support of its Motion. (Doc. 58.)

## II. Discussion

### A. Prevailing Party

BSI argues that the Court should utilize a "net-prevailing party approach" to determine the prevailing party because BSI's Amended Counterclaim asserts claims arising out of the same transaction as Dinosaur's breach of contract claim. Under this approach, the court "arithmetically calculates which party received 'the most points' and 'at the end of the contest [declares] [it] the winner." *DocMagic, Inc. v. Mortg. P'ship of Am., L.L.C.*, 729 F.3d 808, 813 (8th Cir. 2013) (applying Missouri law) (citations omitted). BSI contends that, because its Amended Counterclaim requesting relief in excess of $4 million remains pending, it cannot be established that Dinosaur is the prevailing party.

Dinosaur responds that it is the prevailing party, because all aspects of its contract claim based upon the $3.5 million BSI withheld have been fully adjudicated in its favor. Dinosaur argues that the claims asserted in BSI's Amended Counterclaim are entirely different from Dinosaur's contract claim.

"If a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." *DocMagic, Inc.*, 729 F.3d at 812 (quoting *Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 612 (Mo. Ct. App. 2009)). Under Missouri law, the court must enforce a contract as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous. *Id.* at 813. *See also City of Cottleville v. St. Charles Cnty.*, 91 S.W.3d 148, 150 (Mo. App. E.D. 2002)

(Missouri follows the "American Rule" which generally provides that each litigant must bear the expense of his or her attorneys' fees unless fees are authorized by statute or contractual agreement.)

>Here, § 15.16 of the IPSA provides as follows:
>
>Should any of the Parties employ attorneys to enforce any of the provisions hereof, the Party or Parties against whom any final judgment is entered agrees to pay the prevailing Party or Parties all reasonable costs, charges, and expenses, including attorneys' fees, expended or incurred in connection therewith.

(Doc. 15-1 at p. 11.)

Because the IPSA does not define the term "prevailing [p]arty," this Court must look to Missouri law to interpret what it means. *DocMagic, Inc.*, 729 F.3d at 813. "A 'prevailing party' is one who obtains a judgment from the court, regardless of the amount of damages." *Id.* (quoting *Brooke Drywall of Columbia, Inc. v. Bldg. Constr. Enters., Inc.,* 361 S.W.3d 22, 27 (Mo. Ct. App. 2011)).

BSI argues that "a certification under Rule 54(b) of a separate final judgment on some claims should not be dispositive of a determination of the prevailing party."  (Doc. 57 at p. 5, citing *Asarco, LLC v. NL Industries, Inc.*, 2016 WL 1182632 at *3-4 (E.D. Mo. 2016)).  BSI further claims that taxing costs related to the Judgment on the Pleadings would be premature and that this Court previously held it was appropriate to "defer any award of costs until the entry of judgment on all claims as to all parties in [*Asarco*]." *Id*. at *4.  *Asarco* addressed the billing of costs under 28 U.S.C. § 1920, which excludes attorneys' fees.  In ordering the award of attorneys' fees to Dinosaur in the Judgment on the Complaint, the Court conducted a two-page analysis of whether certification should be granted under Rule 54(b).  *See* Doc. 47 at pp. 14-16.  The Court found that the separate and distinct issues raised in BSI's counterclaim do not involve the merits of the breach of contract claim.  *Id*. at 15.  Although not discussed, the Court was

further mindful of the strong federal policy against piecemeal review. *See Curtiss-Wright Corp. v. General Elec. Co*., 446 U.S. 1, 8 (1980) (Judicial economy supports certification if "no appellate court would have to decide the same issues more than once even if there were subsequent appeals.")

Dinosaur's successful breach of contract claim entitles it to payment of attorneys' fees and expenses under § 15.16 of the IPSA. The Court found that Dinosaur "breached the IPSA for unilaterally deciding to retain the $3,469,718.26," and directed BSI to return the entrusted funds to Dinosaur along with interest, costs, and attorneys' fees. (Doc. 47 at p. 15.) The Court then entered final judgment under Rule 54(b) on the breach of contract claim. Because Dinosaur secured a final judgment[1] obtaining the relief sought in its Complaint, the Court finds that Dinosaur is the prevailing party on its Complaint. The fact that BSI has asserted intentional and negligent misrepresentation claims against Dinosaur in its Amended Counterclaim does not alter Dinosaur's status as the prevailing party on its breach of contract claim. The IPSA, therefore, requires that the Court award "all reasonable costs, charges, and expenses, including attorneys' fees, expended or incurred in connection therewith."

**B.    Reasonableness**

Having found Dinosaur is the prevailing party on its breach of contract claim, the Court next determines the reasonableness of its request for attorneys' fees.

---

[1] The undersigned notes that Dinosaur has filed a Notice of Appeal of the Court's April 17, 2020 final judgment on Dinosaur's breach of contract claim. (Doc. 59.) The pendency of this appeal, however, does not prevent the Court from ruling on the instant Motion for Attorneys' Fees. Resolution of the fees issue now will allow appellate review simultaneously with review of the merits. In fact, Federal Rule of Civil Procedure 54(d), which requires the filing of motions for attorneys' fees fourteen days after entry of judgment, was crafted with this purpose in mind. *See* Fed. R. Civ. P. 54 advisory committee's note (subdivision (d)) ("Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.")

"The amount of the fee must be determined on the facts of each case, and the district court has wide discretion in making this determination." *Safelite Grp., Inc. v. Rothman*, 759 F. App'x 533, 535 (8th Cir. 2019) (quoting *Rogers v. Kelly*, 866 F.2d 997, 1001 (8th Cir. 1989)). To determine the amount of a reasonable fee, the Court uses the "lodestar method," where the starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). The party seeking fees is responsible for providing evidence of hours worked and the rate claimed. *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003). Additionally, "[c]ounsel for the prevailing party should make a good-faith effort to exclude" hours that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The district court is required to exclude from the initial fee calculation hours that were not adequately documented, and hours not "reasonably expended" (e.g., overstaffing a case). *Id*. at 433-34.

A district court may in the exercise of its discretion use a percentage reduction – instead of line-by-line cuts – as a practical means of reducing fee claims. *See, e.g., Mom365, Inc.,* 2019 WL 6019299, at *4 (reducing requested fee award by sixty percent due to excessive billing); *Fletcher v. Tomlinson,* No. 4:14-cv-999 RLW, 2016 WL 6069497, at *9 (E.D. Mo. Oct. 14, 2016) (reducing plaintiff's requested attorneys' fee award by forty-five percent); *Maher v. Barton*, No. 4:13-CV-2260 (CEJ), 2014 WL 1316936, at *3 (E.D. Mo. Apr. 2, 2014) (applying a fifty percent reduction to adjust for excessive billing); *Marez v. Saint-Gobain Containers, Inc*., No. 4:09CV999 MLM, 2011 WL 19390706, at *13 (E.D. Mo. May 18, 2011) (reducing plaintiff's requested attorneys' fee award by fifty percent). The Eighth Circuit affirmed a forty-four percent reduction of attorney fees wherein the district court reduced the fee request based on

"partial success, excess hours, and duplication." *Rural Water System No. 1 v. City of Sioux Center*, 202 F.3d 1035, 1039 (8th Cir. 2000).

Dinosaur seeks a total award of $218,819.50 in attorneys' fees.  In support of its Motion, Dinosaur submits the declarations of Arthur D. Middlemiss ("Middlemiss Declaration"), attorney and partner at LBKM in New York, New York; and the Declaration of Steven M. Aaron ("Aaron Declaration"), attorney and partner at Dentons in Kansas City, Missouri, Dinosaur's "local counsel."  In addition, Dinosaur seeks costs in the amount of $716, and the fees for the time spent preparing the instant Motion, estimated at $16,215.

The Middlemiss Declaration states LBKM expended a total of 194.2 hours for which it seeks a total of $113,867.50.  Specifically, LBKM seeks fees for seven timekeepers at the following rates: $800 per hour for attorney Arthur D. Middlemiss' 76.3 hours of work ($61,040); $800 per hour for attorney Adam S. Kaufmann's 0.7 hour of work ($560); $750 per hour for attorney John W. Moscow's 4.7 hours of work ($3,525); $600 per hour for attorney Marc F. Scholl's 48 hours of work ($28,800); $475 per hour for attorney Elizabeth M. Velez's 30 hours of work ($14,250); $165 per hour for James C. MacFadyen's[2] 32.7 hours of work ($5,395.50); and $165 for Lauren R. Skala's 1.8 hours of work ($297).  The Aaron Declaration seeks fees for three timekeepers at the following rates: $615 per hour for attorney Steven Aaron's 129.6 hours of work ($79,704); $615 per hour for attorney Brian K. O'Bleness' 16.4 hours of work ($10,086); and $285 per hour for paralegal Christy Henry's 53.2 hours of work ($15,162).

BSI argues that Dinosaur's fee request is not reasonable as to the hourly rate or the number of attorney hours expended.

---

[2] Mr. Middlemiss identifies Mr. MacFadyen and Ms. Skala as "litigation support staff."  (Doc. 36 at 7.)  This Court will refer to them as paralegals.

### B.1.  Are the hourly rates reasonable?

In the Eighth Circuit, "a reasonable hourly rate generally means the ordinary fee for similar work in the community."  *Little Rock Sch. Dist. V. State Ark. Dep't of Educ*., 674 F.3d 990, 997 (8th Cir. 2012) (per curiam) (quotation marks and citations omitted).  *See also Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001); *Shakopee v. Mdewakanton Sioux Community v. City of Prior Lake, Minn*., 771 F.2d 1153, 1160 (8th Cir. 1985) (The court does "not automatically accept the lawyer's rate as reasonable; [the court] looks also to the ordinary fee for similar work in the community.") (internal quotations and citations omitted).  Nonetheless, where local community rates would "not be 'sufficient to attract experienced counsel' in a specialized legal field," the appropriate rate may be determined by reference to "a national market or a market for a particular legal specialization…"  *Id*.  (citations omitted).  However, this "does not mean that a district court is forbidden in the ordinary case to focus on the community in which the case was litigated."  *Miller v. Dugan*, 764 F.3d 826, 831-32 (8th Cir. 2014).  Courts may "rely on their own experience and knowledge of prevailing market rates."  *Safelite Grp., Inc.*, 2017 WL 3495768 at *6 (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)).  The court should also examine:

> (1) the time expended, (2) the nature, character and amount of the services rendered, (3) the nature and importance of the litigation, (4) the degree of responsibility imposed on the attorney, (5) the amount of money involved, (6) the degree of professional ability, skill, and experience called for and used; and (7) the result obtained.

*Weitz Co. v. MH Washington*., 631 F.3d 510, 528-29 (8th Cir. 2011) (citing *Roberts v. Rider*, 924 S.W.2d 555, 558-59 (Mo. App. 1996) (listing factors to consider under Missouri law when determining reasonable attorneys' fees in a diversity action)).

The burden of establishing the appropriate rate rests on the fee applicant. *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.")

Dinosaur argues that it was reasonable to hire specialized counsel in New York with an expertise in financial compliance issues, because Dinosaur is an international investment bank that conducts "sophisticated, complicated international transactions." (Doc. 36 at 7.) Dinosaur states that this action is "based on a highly-specialized transnational fact pattern that required a division of labor among several highly and uniquely qualified counsel at LBKM." *Id*. at 8. For example, Mr. Middlemiss, Dinosaur's primary counsel at LBKM, is an expert on "regulatory and other risks faced by multi-national corporations, including best practices in the field of anti-money laundering, anti-bribery, and corruption." *Id*. Dinosaur states that it was necessary to obtain the assistance of "local counsel" Dentons when LBKM was unable to resolve this matter without litigation and the IPSA required filing suit in Missouri. Dinosaur states that both Mr. Aaron and Mr. O'Bleness at Dentons have significant experience in "complex business disputes and the risks faced by multi-national corporations, including anti-bribery, corruption, and related complex white-collar civil and criminal activity." *Id*. at 11. As previously noted, Dinosaur has submitted the Middlemiss and Aaron Declarations, which set out their own experience and that of the attorneys at their respective firms; as well as other supporting documentation. (Docs. 36-1, 36-2.)

BSI argues that the reasonable hourly rate in the relevant community—the Southeastern Division of the Eastern District of Missouri—for a lawyer with comparable skills in this type of case is $300 per hour, one half or less than the $600 to $800 per hour charged by Dinosaur's counsel.  BSI contends that the prevailing hourly rate in this area for paralegal services is $95 per hour, rather than the $285 per hour billed by one of Dinosaur's paralegals.  BSI argues that Dinosaur agreed to this venue when it negotiated the IPSA and cannot recover fees at New York or Kansas City rates.  Further, BSI contends that it was unreasonable to utilize eight attorneys, seven of which are partners or "of counsel", to secure a judgment on the pleadings involving review of the plain language of a contract.

Dinosaur's Missouri counsel, Dentons, charged hourly rates of $615 for attorneys Mr. Aaron and Mr. O'Bleness, and $265 for a paralegal, Ms. Henry.  BSI contends that these hourly rates far exceed the prevailing rate in the relevant legal community of the Southeastern Division of the Eastern District of Missouri.  The Court has reviewed the affidavits submitted by Mr. Poore and counsel for BSI.  The undersigned agrees that $300 per hour is the standard billing rate for senior level partners in Cape Girardeau practicing in the Southeastern Division of the Eastern District of Missouri.

In its Response, Dinosaur cites to a Missouri Lawyer's Media Billing Rate Survey for 2019.  Dinosaur states that this publication demonstrates that $300 per hour for Missouri lawyers is at best, a "median."  (Doc. 58 at p. 6.)  Dinosaur contends that it was "not obliged to employ average or median attorneys to obtain the millions of dollars wrongly withheld from it."  *Id.*

In support of its argument regarding reasonable hourly rates in this area, BSI has submitted the Affidavit of Curtis O. Poore, an attorney at The Limbaugh Firm in Cape Girardeau, Missouri.  (Doc. 57-1.)  Mr. Poore states he has been practicing for thirty years; and

Page **10** of **20**

handles complex civil and criminal litigation in federal courts located primarily in Missouri but also surrounding states. Mr. Poore's personal hourly rate for federal civil litigation is $300 per hour. He states that $300 per hour is the standard billing rate for senior level partners with the necessary expertise to competently litigate Dinosaur's contract claims in federal court for the Southeastern Division of the Eastern District of Missouri. In addition, Mr. Poore expresses the opinion that a reasonable attorneys' fee to secure Dinosaur's judgment in this case is $20,400, based on his estimate of 68 hours of work. He further states that it was unreasonable for a paralegal to charge a rate of $285 per hour, and that the customary rate in the Cape Girardeau area is $90 per hour. BSI has also submitted the affidavits of its own attorneys in which they state they have billed at a rate of $275 and $300 per hour for work in this case. (Affidavit of Aaron W. Sanders, Doc. 57-2; Affidavit of Larry H. Ferrell, Doc. 57-3.) They do not indicate the number of hours expended in this matter.

Mr. Poore appears before this Court frequently and there is no doubt that he and many of his colleagues based in the Southeastern Division could competently handle Dinosaur's breach of contract claim and achieve the same result obtained by Dinosaur's counsel. The undersigned, however, notes that St. Louis is encompassed in the Eastern District of Missouri and attorneys from the St. Louis area routinely practice in the Southeastern Division in breach of contract actions. For this reason, the Court declines to restrict Dinosaur to Cape Girardeau hourly rates, and instead will look at prevailing rates in the wider geographic area of the Eastern District of Missouri.

After reviewing the materials submitted by BSI, the Court has no doubt that Mr. Middlemiss and the other attorneys at LBKM are national experts in their field of complex business dispute and anti-money laundering, or that their billed hourly rates are reasonable in the

New York market. The issue here, however, is whether such expertise was necessary and reasonable to the extent it was used to address the basic breach of contract alleged in the Complaint. In granting judgment as a matter of law on Dinosaur's Complaint, the Court found that "[t]he unambiguous terms of the IPSA d[id] not permit BSI to retain funds from the failed Transaction on the mere speculation of a potential claim or loss." (Doc. 33 at p. 18.)

Dinosaur has offered no support, in the form of affidavits from other Missouri attorneys or otherwise, that Dentons' hourly rate of $615 is reasonable for experienced attorneys practicing in the Eastern District of Missouri. It is worth noting that Dentons is based in Kansas City, Missouri, which is not located within this District. Furthermore, the survey cited by Dinosaur in support of its argument that $300 per hour was unreasonably low, reveals that the median rate of Missouri attorneys overall is $370. *See* "Billing Rates 2019," Missouri Lawyers Weekly (August 5, 2019)*, available at* http://www.thenalfa.org/files/Missouri%20Lawyers%20Weekly%20-%20Billing%20Rate%20Story.pdf. The median rates of partners in St. Louis is $390 and partner in Kansas City is $475. *Id.* As such, even using Dinosaur's own authority, Dentons' hourly rates exceed the average Missouri partner's in every geographic area in the state. When examining attorneys specializing in breach of contract law, the survey included only one attorney—billing $645 per hour—with hourly rates at or above those of Dentons. *Id.* The other partners at the same large St. Louis firm as the attorney billing $645 per hour, also specializing in breach of contract actions, billed at rates of $485 and $425 per hour. An associate specializing in breach of contracts at that firm billed $325 per hour. *Id.* The rates of other partners specializing in breach of contract actions in St. Louis were $375 and $425; an associate billed $250 per hour; and a paralegal $100 per hour. *Id.*

After examining the evidence submitted by the parties, considering the reasonableness factors under *Weitz*, and drawing on the undersigned's own experience with billing rates in Missouri, the Court will reduce the rate of Middlemiss and Kaufmann to $645 per hour, Moscow to $600 per hour, Scholl to $480 per hour, and Velez to $380 per hour. Additionally, the Court will reduce the rate of the Dentons' attorneys to $450 per hour. *See Holmes v. Slay*, 4:12CV2333 HEA, 2017 WL 994473, at *3 (E.D. Mo. Mar. 15, 2017) (reducing hourly rate from $520 to $450); *see also S.M. v. Lincoln Cty.*, No. 4:12CV02276 PLC, 2016 WL 6441587, at *1-10 (E.D. Mo. Nov. 1, 2016) and *Fletcher v. Tomlinson*, No. 4:14-CV-999 RLW, 2016 WL 6069497, at *2-9 (E.D. Mo. Oct. 14, 2016) (approving hourly rate of $450.00). The Court will reduce the rate of all paralegals to $100 per hour.

### B.2.  Were the hours expended reasonably necessary for the result obtained?

Next, the Court must review the hours expended by the attorneys to ensure they are reasonable. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. *See also Wheeler v. Missouri Highway & Transp. Com'n*, 348 F.3d 744, 754 (8th Cir. 2003) (citing *Hensley*, 461 U.S. at 433, 434). The court reviews billing records submitted in support of the fee request to determine whether the hours were reasonably incurred or if any of the hours were "excessive, redundant, or otherwise unnecessary," or if they reflected "overlawyering." *See Robinson v. Custom Tree & Lawn Service, Inc.*, No. 4:08-CV-992 CAS, 2010 WL 3399076, at *2 (E.D. Mo. Aug. 26, 2010).

Dinosaur is a United Kingdom-regulated financial institution majority-owned and operated by a citizen of New York, United States. Dinosaur states that it has had a formal retainer agreement with LBKM since 2014, and LBKM is familiar with Dinosaur's business

activities, including those relevant to the IPSA.  Dinosaur indicates that LBKM undertook significant investigation of the facts and contracts underlying the dispute and attempted to resolve the dispute without litigation.  The Court agrees that it was reasonable for Dinosaur to seek the expertise of its New York counsel at the beginning of the dispute with BSI in December 2018, in light of its relationship with Dinosaur as outside counsel, its familiarity with Dinosaur's business transactions, and its location in the same city as Dinosaur's majority owner.

Mr. Middelmiss' Declaration stated that as the supervising attorney, he and each timekeeper reviewed the hours billed "to ensure that the tasks and time billed were reasonable and fair."  (Doc. 36-1 at p. 6.)  He added that "[w]here appropriate, time was eliminated or reduced if the amount of time appeared too high for the corresponding task.  Removed entries were not included in the spreadsheet tallying timekeeper hours marked as Exhibit A-1 [Doc. 36-1 at pp. 8-11]."  *Id*.

Although it was reasonable for Dinosaur to engage LBKM at the outset followed by local counsel, the Court finds that the number of hours billed by LBKM and Dentons cannot be solely attributed to litigating Dinosaur's breach of contract claim.  While Dinosaur claims that "a prevailing litigant who is entitled to attorneys' fees may also recover those associated with defending against counterclaims" (Doc. 36 at p. 5), the applicable law does not support this contention based on the record before the Court at this time.  As noted by BSI, Missouri law provides that "[w]hen an award of attorneys' fees is authorized for one particular claim among many, the trial court must segregate the claims, even if segregation would be difficult."  (Doc. 57 at p. 7, citing *Lapponese v. Carts of Colorado, Inc*., 422 S.W.3d 396, 406 (Mo. App. E.D. 2013) (citing *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 23 (Mo. Banc 2012)).  Even so,

> if the claims in issue share a common core of facts and are based on related legal theories so that much of counsel's time is devoted generally to the litigation as a

Page **14** of **20**

> whole, and it would be difficult to divide counsel's hours on a claim-by-claim basis, the claims will not be reviewed as distinct. *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 507 (Mo.App. E.D. 2013). Essentially, where the effort and proof were the same for all claims, "the efforts of the prevailing attorneys should not be discounted." *Id*.

*Lapponese*, 422 S.W.3d at 406.

The litigation in this case resulted from the Transaction being rejected. Some of LBKM's legal work was focused on demanding the return of the $3,469,718.26 withheld by BSI in response to the failed Transaction which represented a breach of contract. With that said, LBKM expended substantial time investigating the failure of the Transaction (e.g., exploring the role of third parties such as Barnett Capital, Tipco, and de Jesus & de Jesus, as well as whether they should be joined as parties; communications with OFAC concerning sanctions; review of the judgment from the Curacao Court; as well as responding to and investigating issues associated with the much more complicated issues surrounding BSI's Counterclaim). Investigation into the failure of the Transaction and related tasks cannot reasonably be attributed to Dinosaur's breach of contract claim. The IPSA did not include any provision for the retention of funds in the event of a failed transaction. Dinosaur retained LBKM to address novel and difficult issues related to the Transaction which involved entities from multiple continents, as well as a judgment from a foreign court. Those issues are well beyond the question of whether BSI breached the IPSA by retaining a 5% "transaction fee" and 15% "escrow holdback" after the Transaction failed.

**LBKM** billed **194.2 hours** for a total fee of **$113,867.50**, for work performed between December 3, 2018 and December 5, 2019. As previously noted, this fee request consists of five different attorneys, as well as two paralegals. The dispute over Dinosaur's funds began in December 2018. LBKM's billing records reveal Mr. Middlemiss began conferring with

Missouri attorneys regarding filing suit on January 7, 2019.  (Doc. 36-1 at p. 9.)  In that short one-month period, LBKM had already billed 74.8 hours, for a total of $49,986.50.

With regard to the amount of time billed by Dinosaur's counsel, the record indicates Dentons began billing related to this matter on April 4, 2019.  (Doc. 36-2 at p. 8.)  Dinosaur filed the instant breach of contract action in this Court on May 23, 2019.  (Doc. 1.)  **Dentons** billed a total of **199.2 hours** from April 4, 2019 to December 10, 2019, for a total of **$104,952**.  From the time Dentons became involved in this matter on April 4, 2019, through December 2019, LBKM continued working on this matter, billing an additional 80.1 hours for a total of $39,816.60.

Mr. Poore has expressed the opinion that reasonable attorneys' fee to secure Dinosaur's judgment is $20,400, based on his estimate of 68 hours at $300 per hour.  While this estimate of necessary hours may be reasonable in terms of work related directly to the breach of contract claim, it does not account for the time LBKM expended in attempting to resolve the entire matter without litigation.

Although the underlying Transaction involved multiple international entities, Dinosaur's breach of contract action filed in this Court was not complex.  Dinosaur filed its Motion for Judgment on the Pleadings on July 31, 2019, approximately three months after filing the Complaint, and prior to any discovery being conducted.  (Doc. 18.)  The Rule 16 Conference was held on August 20, 2019, and the Case Management Order was issued on August 21, 2019.  (Docs. 29, 30.)  On December 6, 2019, the Court granted Dinosaur's Motion for Judgment on the Pleadings.  (Doc. 33.)

In determining Dinosaur's Motion for Judgment on the Pleadings, the Court reviewed the thirteen-page Complaint, which alleged claims of breach of contract, breach of good faith and fair dealing, and conversion based on BSI's withholding of $3,469,718.26 of the funds from the

failed Transaction.  The Court also considered extraneous documents submitted by Dinosaur, including the IPSA and other documentation, which it found to be embraced by the pleadings.  In approximately eight pages of analysis, the Court determined that Dinosaur was entitled to judgment on the pleadings as to its breach of contract claim because the terms of the IPSA did not permit BSI to withhold the entrusted funds from the failed Transaction.  (Doc. 33 at pp. 11-19.)  The Court arrived at this determination by applying basic principles of contract law to the plain language of the IPSA.  The Court then proceeded to evaluate BSI's Counterclaim.  *Id.* at 19-24.

       The Court finds that Dinosaur has failed to meet its burden of proving that the fees requested were reasonably necessary to achieve the result obtained.  Dinosaur has identified seven attorneys and three paralegals from two different firms who together billed 393.4 hours on this matter.  The Court recognizes Dinosaur's desire to consult with familiar New York counsel at the beginning of the dispute with BSI in an attempt to resolve the matter and determine a course of action.  Dinosaur, however, fails to explain why this straightforward contract action required attorneys from both firms to bill a total of 279.3 hours from April 2019 to December 2019.  A review of the billing entries reveals what appears to be redundant and excessive work related to the drafting of the Complaint and other pleadings.  LBKM's counsel reviewed pertinent documents in order to prepare the pleadings and Dentons' counsel duplicated those efforts.  Courts have reduced hours awarded when multiple attorneys work on the same tasks as one another.  *See Kline v. City of Kansas City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001) (affirming reduction of fees for "overlawyering"); *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) ("A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used.")  Indeed, the simple

factor of having an excessive number of attorneys without an adequate explanation as to need or necessity has resulted in a reduction of claimed time.  *See e.g., Mom365, Inc. v. Pinto*, 4:19-CV-01226 JAR, 2019 WL 6019299, at *2 (E.D. Mo. Nov. 14, 2019); *Am. Modern Home Ins. Co. v. Thomas*, No. 4:16 CV 215 CDP, 2019 WL 3976355, at *5 (E.D. Mo. Aug. 22, 2019); *St. Louis Effort for AIDS v. Lindley-Myers*, No. 13-4246-CV-C-ODS, 2018 WL 1528726, at *4-5 (W.D. Mo. Mar. 28, 2018).  The need for three paralegals to expend a combined 87.7 hours on a straightforward breach of contract claim is excessive.  Further, part of Dinosaur's Motion for Judgment on the Pleadings related to BSI's Counterclaim, which is still pending.  Dinosaur is not entitled to fees for work performed related to the Counterclaim as it contains additional issues unrelated to the contract issue presented in the Complaint.

### B.3.  Lodestar Calculation

In consideration of the facts and circumstances set out above, the Court concludes that a reduction in the hourly rates, as well as the number of hours claimed is warranted.  Rather than make a line-by-line cut to account for the overlawyering and duplicative work in the more than twenty pages of billing records submitted, the Court will exercise its discretion to make a percentage reduction to the hours billed by each firm.  *See Rural Water Sys. No. 1 v. City of Sioux Ctr.*, 202 F.3d at 1039.  The Court will reduce LBKM's requested hours by fifty percent; and reduce Denton's requested hours by seventy percent.  This reduction adequately compensates LBKM for the expertise in examining a breach of contract question for a complex international Transaction, as well as its efforts at resolving the dispute without litigation.  LBKM should not be compensated for its work related to BSI's counterclaims, exploring other avenues of recourse, or investigating exposure to OFAC sanctions.  As previously discussed, Dentons'

timekeepers excessively billed by charging for duplicative work of LBKM's counsel related to filings with the Court and BSI's counterclaim.

With the adjustments to the billing rates and hours of Dinosaur's counsel discussed above, the lodestar calculation is as follows:

| Name | Hours Claimed | Hourly Rate Proposed | Hours Approved | Hourly Rate Approved | Total Fee |
|---|---|---|---|---|---|
| Middlemiss | 76.3 | $800 | 38.15 | $645 | $24,606.75 |
| Scholl | 48 | $600 | 24 | $480 | $11,520.00 |
| Velez | 30 | $475 | 15 | $380 | $5,700.00 |
| MacFayden | 32.7 | $165 | 16.35 | $100 | $1,635.00 |
| Moscow | 4.7 | $750 | 2.35 | $600 | $1,410.00 |
| Kaufmann | 0.7 | $800 | 0.35 | $645 | $225.75 |
| Skala | 1.8 | $165 | 0.9 | $100 | $90.00 |
| Aaron | 129.60 | $615 | 38.88 | $450 | $17,496.00 |
| O'Bleness | 16.4 | $615 | 4.92 | $450 | $2,214.00 |
| Henry | 53.2 | $285 | 15.96 | $100 | $1,596.00 |

**TOTAL FEE AWARD (excluding instant Motion)** **$66,493.50**

This amount is reasonable for the combined work of LBKM and Dentons in securing a judgment on the pleadings concerning the straightforward breach of contract issue presented in the Complaint.

BSI does not object to Dinosaur's request for costs in the amount of $716 for filing fees, and the Court finds these costs are reasonable. The Court finds Dinosaur's request for an additional award of $16,215 for fees associated with preparing the instant Motion excessive.

Instead, an award of $4,864.50[3] is reasonable, which reflects a seventy percent reduction and is commensurate with the overall attorneys' fee reduction described in the above lodestar calculation.

### III. Prejudgment Interest

Mo. Rev. Stat. § 408.020 allows creditors "to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts,…and demand of payment is made[.]" BSI does not dispute that Dinosaur is entitled to recover pre-judgment interest. "The award of prejudgment interest in a case in which § 408.020 is applicable is not a matter of court discretion; it is compelled." *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 112 (Mo. Ct. App. 2004). A Writ of Garnishment was entered on May 28, 2020, which included $431,195.67 for prejudgment interest.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Dinosaur Merchant Bank Limited's Motion for Award of Attorneys' Fees and Costs (Doc. 36) is **granted** in that Dinosaur is awarded **$66,493.50** in attorneys' fees, **$4,864.50** for the attorneys' fees associated with the filing of this Motion, and **$716** in costs.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of June, 2020.

---

[3] *Cf. Winter v. Cerro Gordo County Conservation Bd.*, 925 F.2d 1069, 1074 (8th Cir.1991) (finding no abuse of discretion in denying fee payment for post-verdict fee application).