UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DINOSAUR MERCHANT BANK LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.  1:19 CV 84 ACL |
| | ) |
| BANCSERVICES INTERNATIONAL LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions concerning post-judgment

discovery: Plaintiff Dinosaur Merchant Bank Limited's ("Dinosaur") Motion to Compel (Doc.

77); and Defendant Bancservices International, LLC's ("BSI") Motion to Quash or Modify

Subpoenas or for Protective Order (Doc. 70).

### I.    Background

In its Complaint, Dinosaur asserted claims of breach of contract, breach of good faith and

fair dealing, and conversion based on BSI's withholding of $3,469,718.26 of funds from a failed

transaction ("Transaction").  The Transaction was initiated under an International Payment

Services Agreement ("IPSA") executed between the parties.  BSI filed a Counterclaim, in which

it asserted claims of fraud, breach of contract, and indemnity related to the Transaction.

On December 6, 2019, the Court granted Dinosaur's Motion for Judgment on the

Pleadings.  (Doc. 33.)  The Court held that BSI was in breach of the IPSA for retaining the funds

at issue.  On April 17, 2020, the Court entered final judgment pursuant to Federal Rule of Civil

Procedure 54(b) in favor of Dinosaur in the amount of $3,469,718.26.  (Doc. 49.)  On June 26,

2020, the Court awarded Dinosaur $66,493.50 in attorneys' fees, $4,864.50 for the attorneys'

fees associated with the filing of the Motion for Attorneys' Fees, and $716 in costs.  (Doc. 67.)

On May 15, 2020, BSI filed a Notice of Appeal of the Court's April 17, 2020 final judgment.  (Doc. 59.)  BSI did not post a bond.

Dinosaur filed an Application for Writ of Garnishment on the property of judgment debtor BSI held by BMO Harris Bank, NA, which was issued by the Court on May 28, 2020. (Docs. 63, 64.)  The Writ of Garnishment was returned unexecuted, with a notation by the United States Marshals Service that counsel for Dinosaur had notified them that "they found out there was nothing to garnish and that our service was no longer needed."  (Doc. 83.)

On July 7, 2020, BSI filed the instant Motion to Quash (Doc. 70), in which it argues that subpoenas duces tecum served by Dinosaur on several different entities associated with BSI should be either quashed or modified, because they seek privileged or irrelevant information. Dinosaur opposes the Motion.  (Doc. 86.)

Dinosaur, in turn, filed a Motion to Compel Defendant to Respond to Post-Judgment Discovery (Doc. 77) on July 23, 2020, and an Amended Memorandum in Support on August 25, 2020 (Doc. 90).  Dinosaur requests that the Court compel BSI to provide relevant documents and information in response to interrogatories and requests for production pursuant to post-judgment written discovery served on BSI.  Dinosaur further requests monetary sanctions against BSI; and reasonable costs and attorneys' fees incurred in preparing the Motion.[1]  BSI has filed a Response in opposition to Dinosaur's Motion.  (Doc. 87.)

## II.    Discussion

### A.    Standard

---

[1] Dinosaur clarifies in a supplemental pleading that its request for sanctions is "against only BSI for its failure to comply with post-judgment discovery and withdraws any request for sanctions against its counsel or firms."  (Doc. 90 at p. 1.)

Discovery in aid of the execution of a money judgment is controlled by Federal Rule of Civil Procedure 69, which states, in relevant part, that "[i]n aid of the judgment or execution, the judgment creditor...may obtain discovery from any person...as provided in these rules or by the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(2).

Missouri's Rules of Civil Procedure allow post-judgment discovery of "matters...relevant to the discovery of assets or income subject to...the satisfaction of judgments."  Mo. R. Civ. P. 76.28.  Rule 69(a) allows the "judgment creditor...freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor."  *ITOCHU Int'l, Inc. v. Devon Robotics, LLC,* 303 F.R.D. 229, 232 (E.D. Pa. 2014) (citation omitted); *see also* Wright & Miller, Discovery in Aid of Execution, 12 Fed. Prac. & Proc. Civ. § 3014 (3d ed.) ("The judgment creditor is allowed discovery to find out about assets on which execution can issue...").

Rule 69(a) applies the normal procedure of conducting discovery to post-judgment discovery requests.  Fed. R. Civ. P. 69(a)(2).  For instance, responses to written discovery must comply with the requirements of Rules 33 and 34, including the time to respond and waiver of objections if not timely raised.  *BancorpSouth Bank v. RWM Properties II, LLC, No.*, No. 4:11CV373 JCH, 2012 WL 3939972, at * 1 (E.D. Mo. Sept. 10, 2012) (applying Rules 33 and 34 to post-judgment discovery requests).  Rule 45 provides the specific rules for discovery directed at nonparties.  If a person commanded to produce documents serves a written objection, the serving party may, upon notice to the commanded person, move the court for an order compelling production.  Fed. R. Civ. P. 45(d)(2).

In addition, Rule 37 provides "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if, *inter alia,* a party fails to answer an interrogatory or fails to produce documents.  Fed. R. Civ. P. 37(a)(3)(B).  "[E]vasive

3

or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

### B.    Dinosaur's Motion to Compel

On May 18, 2020, Dinosaur served its first set of Request for Production of Documents to Judgment Debtor BSI and first set of Interrogatories to Judgment Debtor BSI.  Absent any extensions, BSI's responses were due on June 17, 2020.

Dinosaur states that, on June 17, 2020, BSI served its "barebones, albeit shocking" interrogatory answers and responses to document requests.[2]  (Doc. 78 at p. 2.)  Dinosaur contends that BSI has not produced any documents related to its finances and, in fact only produced a single document—a court filing in an unrelated case.  Additionally, since serving its discovery requests on BSI, Dinosaur states it has learned "troublesome facts, establishing BSI misappropriated [Dinosaur]'s funds almost immediately after refusing to return them under the guise of keeping the funds [in] 'escrow.'"  *Id.*

On June 24, 2020, counsel for Dinosaur wrote to BSI's counsel to address the deficiencies and to schedule a meet-and-confer conference with counsel.  Dinosaur granted BSI an extension of time, until June 30, 2020, to produce the documents.  BSI did not produce the requested documents.  Counsel for both parties participated in a meet-and-confer telephone conference on July 14, 2020, to discuss the discovery disputes.

In BSI's Response to the Motion to Compel, Counsel indicates that he represented at the conference that BSI would turn over all of the financial documentation identified in its initial

---

[2]Counsel for BSI points out that he informed counsel for Dinosaur that BSI would not be able to provide all of the requested discovery by the June 17th due date, and requested an extension of time to respond.  (Doc. 87 at p. 1-2.)  He indicates that the parties agreed BSI would provide the answers and documents in BSI's possession by the original response deadline, and supplement those responses as additional documentation was received.  *Id.*

4

responses upon receipt from the third-party accountant.  He further states that counsel for both parties went through each interrogatory and request for production and discussed solutions to the objections.  Counsel for BSI states that it was his understanding at the end of the conference that the only remaining dispute was with regard to Request for Production No. 15, pertaining to the disclosure of BSI's contractual and payment relationship with counsel.  He further states that BSI tendered its verified Interrogatory Responses and first supplemental document disclosures contemporaneously with the filing of the Response to the Motion to Compel.  The document disclosure included BSI's 2018 tax return, organizational structure chart, Operating Agreement, Articles of Incorporation, stock certificates, and Focus Bank account records from October of 2018 through the present.  As a result, BSI believes that some of the discovery requests at issue in the Motion to Compel are moot.  As to the remaining requests, BSI admits Dinosaur is entitled to some of the requests, and provides objections as to the remaining requests.

In its Reply, Dinosaur states that the documents and responses BSI provided with its Response to the Motion to Compel fall far short of the requests made.  Dinosaur contends that BSI also ignores the fact that Dinosaur has uncovered "what appears to be a massive fraud perpetrated by BSI which, apparently, its accountant, shareholders, and counsel are now helping to cover up by slow-walking responses to discovery."  (Doc. 89 at p. 2.)  Specifically, Dinosaur notes that BSI admits that it took over $2 million it claimed to hold in escrow for Dinosaur and used it instead to repay alleged loans by shareholders.  BSI remains silent about the whereabouts of the $867,429.63 processing fee.  Dinosaur argues that BSI's Response illustrates BSI's lack of diligence in complying with Dinosaur's discovery requests, and the need for a Court order giving BSI a short window to complete production.

5

The undersigned finds that Dinosaur properly propounded post-judgment discovery on BSI, and BSI has failed to provide the requested discovery necessary to enforce Dinosaur's judgment.   Dinosaur's Motion to Compel will, therefore, be granted.

The unresolved discovery requests and disputes are addressed below.

**1.      Interrogatory No. 12**

This interrogatory requests BSI to "describe with specificity the methods by which you searched for documents responsive to the Requests for Production."  (Doc. 78-1 at p. 2.)  BSI objected to the interrogatory on the basis of relevance.  *Id.*

BSI contends that the "manner and method by which counsel and BSI chose to search for and identify the information and documents disclosed is relevant to any of [Dinosaur]'s claims." (Doc. 87 at p. 4.)  Dinosaur responds that this information is relevant to determine if BSI made reasonable efforts to obtain the documents.  Dinosaur argues that BSI's claim that it lacks access to its own records and only its accountant possesses this information is not reasonable and illustrates its gamesmanship.

The Court finds that the requested information is relevant and must be disclosed by BSI. BSI is a state-licensed financial institution subject to record keeping requirements and, as such, must have access to its own records.  The requested information will determine whether BSI's efforts to obtain documents were reasonable.  BSI's objection is overruled.

**2.      Document Request No. 7**

Dinosaur requests "all documents concerning taxes owed or paid by you or on your behalf to, or assessed against you, from January 1, 2018, to the present, including but not limited to complete copies of your federal (U.S.) and state (Missouri and other state) income tax returns

for the years 2018 through the present, and all back-up materials, schedules and worksheets concerning such returns."  (Doc. 78-1 at p. 3.)

BSI objected on the basis of relevancy, but represented that it has not filed taxes for the year 2019.  *Id.* at p. 4.  BSI also indicated that it would further supplement its response with a copy of tax returns for tax year 2018.  *Id.* In its Response to the Motion to Compel, BSI argues that it has complied with this request by tendering its 2018 tax return, thereby mooting this issue.

Dinosaur argues that the 2018 tax returns provided indicate BSI reported $739,428 for BSI's "gross receipts or sales," which is less than the "processing fee" charged to Dinosaur for the subject transaction.  Further, the 2018 tax filing does not reference "antecedent loans" from its shareholders despite BSI's claim that it used Dinosaur's money to repay shareholder loans. Dinosaur argues that, absent fraud, additional tax-related information exists and requests that the Court compel its production.

The Court agrees that BSI has not fully responded to Dinosaur's request. Furthermore, the request is relevant.  Thus, BSI is ordered to produce the full tax return information sought in Document Request No. 7.  If an extension was requested for tax year 2019, a copy of the return/s must be produced as soon as they are filed.

### 3.    Document Request No. 10

Dinosaur requests "all documents sufficient to identify your organizational structure, formation, and capitalization."  (Doc. 78-1 at p. 4.)  BSI objected on the basis of relevance.  *Id.*

BSI states that it has attempted to resolve this dispute by producing its Articles of Organization and Operating Agreement, and has created a chart reflecting its organizational structure.  BSI argues that these documents sufficiently identify its initial members and their initial capital contributions.  Dinosaur responds that this production was incomplete, as it only

identified the initial capital contributions, which consisted of each of its two members providing $5,000. Dinosaur notes that BSI admitted in response to Interrogatory No. 6 that it had received a loan from Focus Bank for "starting and funding" BSI, which is synonymous with "capitalizing."

The Court agrees that BSI's response is incomplete. Dinosaur does not restrict its request to initial capitalization. BSI's objection is overruled and BSI is directed to provide complete information regarding capitalization, both initially and subsequent to BSI's inception.

### 4.    Document Request 11

Dinosaur requests "all documents constituting your financial statements, profit and loss statements, trial balances, balance sheets, cash flow statements, and similar documents." (Doc. 78-1 at p. 4.) BSI objected on the basis the request was overly broad and not relevant, but indicated it would supplement its response with the most recent statements in its possession. *Id.*

In its Response to the Motion to Compel, BSI states that counsel for the parties agreed in their July 14, 2020 meeting that financials from the date of the transaction at issue in 2018 forward would be a sufficient response, and that BSI has no objection to producing this information. BSI, however, states that the financial statements are not in BSI's possession and counsel has requested the statements from BSI's accountant, Theodore Eftink. According to BSI, Mr. Eftink has not produced the documents, and BSI cannot control the date upon which they are produced.

Dinosaur responds that BSI's excuse is both implausible and irrelevant. Dinosaur requests that the Court enter an order with a hard production deadline. Further, Dinosaur disagrees that only financial statements from the date of the transaction going forward are sufficient. Dinosaur explains that it requires financial statements that account for the purported

8

loans from its members and Focus Bank, which BSI has put at issue by disclosing that it used

Dinosaur's money for the repayment of loans.

BSI's claim that it lacks possession of its financial statements and is unable to secure

them from their accountant is incredible.  The undersigned also finds that, in light of BSI's

disclosure that it used Dinosaur's funds to repay loans, the request should not be limited to the

date of the transaction going forward.  Instead, BSI must produce all financial statements dating

back to the issuance of these loans.  BSI's objection is overruled.

### 5.    Document Request No. 15

Request No. 15 provides as follows: "all documents concerning contracts and agreements

that you have entered into from October 30, 2018, to the present, including but not limited to

agreements to engage attorneys or consultants, settlement agreements, loans and credit

agreements, sales and purchase agreements, share transfer agreements, and escrow agreements.

You may redact any privileged information, but you may not redact the account number from

which any payments were made or to which payments were made by you."  (Doc. 78-1 at p. 5.)

BSI objected on the basis of overbreadth, relevance, and violation of attorney-client privilege.

*Id.*

Dinosaur explains in its Motion to Compel that the purpose of this request is to find out

who BSI has paid and from what accounts, due to the possibility of clawing back fraudulent

transfers.  Dinosaur also seeks to clarify the state of BSI's financial affairs, given the fact BSI

claims to have only $65 yet has funds to retain attorneys since at least June 19, 2019.

In its Response, BSI states that it informed counsel for Dinosaur that there were no

settlement agreements, loan and credit agreements, sales and purchase agreements, shared

transfer agreements, or escrow agreements.  BSI objects to producing documents relating to its

9

contracts and payments to its attorneys on the basis of attorney client privilege.  Dinosaur now agrees to narrow its request to contracts with any entity or person which received any part of the $3,469,718.26 withheld by BSI from Dinosaur.  It argues that this information is necessary in its analysis of potential fraudulent transfers to initiate clawback actions.

As an initial matter, the Court notes that Dinosaur attempted to subpoena directly from BSI's law firms these same agreements and documents.  This subpoena is the subject of the pending Motion to Quash.  The parties have repeated their arguments set forth in connection with the Motion to Quash.

Although the federal common law of attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal representation, it ordinarily does not apply to client identity and fee information.  *United States v. Sindel,* 53 F.3d 874, 876 (8th Cir. 1997); *In re Grand Jury Subpoena,* 55 F.3d 368, 369 (8th Cir.1995).  The Eighth Circuit has identified certain circumstances under which the privilege protects even client identity and fee information.  These special circumstances have been categorized as the legal advice exception, the last link exception, and the confidential communications exception.  *Id.*

BSI acknowledges that fee agreements are not generally privileged, however, argues that the legal advice exception applies.  The legal advice exception protects client identity and fee information when there is a strong probability that disclosure would implicate the client in the very criminal activity for which legal advice was sought.  *Sindel*, 53 F.3d at 876.

Dinosaur, relying upon *Comcast of Illinois X, LLC v. Multivision Electronics, Inc.*, 4:06MC675-DJS, 2007 WL 1527849 (E.D. Mo. May 23, 2007), contends that the documents sought would require the disclosure of the entity paying BSI's legal fees when their attorneys were hired "to aid in the defense against collections efforts."  (Doc. 87 at p. 8.)

10

The Court finds that *Comcast* is distinguishable.  In that case, the law firm was retained by the debtor "after the entry of [a] judgment, in connection with an appeal to the United States Court of Appeals for the Eighth Circuit, and for legal counsel with respect to the protection of [debtor]'s assets from collection on the judgment."  2007 WL 1527849 , at * 1.  The Court found that the legal advice exception applied to justify redactions the debtor's law firm made when responding to a subpoena seeking information to identify assets to assist in the creditor's collection efforts.  *Id.*

Here, the record reflects that BSI's lawyers were not hired to defend against collection efforts.  Dinosaur filed its Complaint on May 23, 2019.  (Doc. 1.)  Attorneys from Blitz, Bardgett & Deutsch, LC ("Blitz") entered appearances in June 2019, and filed BSI's Counterclaim in July 2019.  As such, the Blitz firm was hired to defend against Dinosaurs breach of contract action and prosecute BSI's Counterclaim.  Attorneys from Johnson, Schneider and Ferrell ("Johnson") entered appearances on January 15, 2020, the same day BSI filed its Amended Counterclaim. (Docs. 42, 43.)   The final judgment against BSI was not entered until April 17, 2020.  (Doc. 49.) Because both firms were hired prior to the entry of judgment, collection efforts had not yet begun.  Thus, the legal advice exception does not apply, and the requested information is not privileged.  BSI must produce contracts with any of its attorneys if the attorneys received any part of the $3,469,718.26 withheld by BSI from Dinosaur.

BSI also objects to producing old customer contracts, to the extent these are being requested under Document Request No. 15.  BSI first argues that these are not relevant because BSI is not owed money from any entity and all of its prior customer contracts have been terminated.  BSI next cites a confidentiality provision included in all such contracts, which

prohibits the disclosure of the agreement and its terms.  BSI argues that this is relevant in light of the fact that Dinosaur is "in competition with BSI."  (Doc. 87 at p. 10.)

BSI's objection lacks merit.  As Dinosaur points out, counsel for BSI has represented to Dinosaur that BSI is no longer operating, and has surrendered its license to operate as a money transmitter in Missouri.  Consequently, BSI would suffer no prejudice from the disclosure of customer agreements.  BSI must, therefore, produce any customer agreements that may have involved a payment by BSI to another entity of Dinosaur's funds.  BSI's objections to Doc. Request No. 15 are overruled.  If counsel for BSI believes production of the fee information would result in the disclosure of a confidential communication, the information may be submitted to the Court for review in-camera.

### 6.      Interrogatory No. 6

This interrogatory requests BSI to identify "each and every debt you have paid since October 30, 2018," along with specific details of any such debt., including "an explanation of the type of debt," "contact information for the person to whom or entity to which the debt was owed," and "the bank account to which it was paid."  (Doc. 78-1 at p. 1.)  BSI responded that it had "paid an outstanding debt owed to Focus Bank on December 3, 2018 in the amount of $2,102,288.88," which was a "pre -existing debt incurred in the starting and funding of" BSI.  *Id.* It further disclosed it made two separate payments of $250,000 on the same date to Bancservices Group, Inc. ("BSG"), and Thompson International L.T.D., Inc. ("Thompson"), "for payment of outstanding and pre-existing loans made to Bancservices International, L.L.C. by the aforementioned creditors."  *Id.* at p. 2.  BSI agues that it has fully and completely answered Interrogatory No. 6.

Dinosaur argues that BSI's response is incomplete, as BSI did not identify the bank accounts to which these debts were paid, and did not explain the nature of the debt owed to the shareholders Thompson and BSG.  Dinosaur also notes that BSI did not properly identify the contact person for Thompson or BSG, but instead merely provided the name and mailing address of the registered agent of each organization.

The Court finds that BSI's response is incomplete.  Considering the large sums of money transferred to these parties—presumably Dinosaur's funds that were to be held in trust—Dinosaur is entitled to receive more details regarding these transactions.  BSI should supplement its response with detailed descriptions of the nature of the debt, the bank accounts to which these debts were paid, and more detailed contact information for Thompson and BSG.

### 7.     Document Request No. 1

Dinosaur requests "all documents and communications concerning the current location, including the account number and any transfers thereof, of the 5% processing fee of $867,429.63 and the 15% escrow holdback of $2,602,288.63 which [BSI] has been adjudged to have wrongly withheld from [Dinosaur] according to the April 17, 2020 Judgment entered in this lawsuit." (Doc. 78-1 at p. 3.)  BSI responded that it was not in possession of any such documents or communications, and was not in possession of the funds.  *Id.*  BSI stated that the funds "were used in the ordinary course of business of [BSI] and/or previously paid to creditors of [BSI]."  *Id.*

Dinosaur argues that BSI's statement that it has no documents or communications regarding the location of the funds is false.  It contends that, if BSI used the funds in the regular course of business, it must have a document establishing where the funds went.

In its Response, BSI noted that Dinosaur only asked about the *current location* of the funds and did not seek any documentation regarding the prior disposition of the funds at issue.

13

BSI states that, in "an effort to continue to be transparent with the Court and the other parties in this case," BSI requested that its accountant, Mr. Eftink, prepare an accounting of the use of all the funds at issue in this case.  (Doc. 87 at p. 12.)

Dinosaur argues that BSI's Response demonstrates bad faith, as BSI took the funds without permission while affirmatively telling Dinosaur the funds would be held in escrow. Dinosaur phrased the request to seek the "current" location of the funds because it did not know that BSI had taken the funds at that time.  Dinosaur contends that the documents regarding the funds' disposition are within BSI's possession because two transfers totaling $500,000 went to the shareholders, BSG and Thompson.  Dinosaur states that BSG is owned by Glenn and Linda Ault, and Thompson is owned by Javier Goichochea.  Dinosaur argues that these individuals provided information in response to interrogatories, and are within the control of BSI.

The Court agrees with Dinosaur that BSI's Response is incomplete.  BSI must provide both the accounting and the requested documentation regarding the prior disposition of the funds.

### 8.    Document Request No. 13

Dinosaur requests "all documents concerning debts paid by you since October 30, 2018." (Doc. 78-1 at p. 4.)  BSI responded that it "has paid the debts identified in its interrogatory responses and will supplement this response with any documentation in its possession concerning said debt payments."  *Id.*  Dinosaur argues that the requested documents are of critical importance because they include the three loans that totaled the amount BSI was to hold in escrow and BSI has not offered any documents regarding such.

In its Response, BSI states that it "fully intends to produce the requested documents as they relate to the three debts BSI has stated it has paid in its interrogatory response."  (Doc. 87 at p. 13.)  BSI further states that it "does not contest an order compelling compliance with this

14

request," but requests fourteen days to obtain any loan documents that may be in the possession of Focus bank. *Id.* Dinosaur responds that BSI's request for additional time is "outrageous," and demonstrates BSI's contempt for the discovery process. (Doc. 89 at p. 9.)

The Court will grant Dinosaur's unopposed motion to compel documentation regarding the three loans. It has been almost three months since the initial deadline for document production. BSI will be given five business days to produce the loan documentation, as well as the other documents and information as set out above. No further extensions will be granted. Failure to comply fully with this Order will result in the imposition of sanctions.

### C.    Dinosaur's Request for Attorneys' Fees

The Court further finds that Dinosaur is entitled to reimbursement of reasonable expenses and attorneys' fees incurred in preparing the instant motion and response to the Motion to Quash. Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides, "If the motion [for an order compelling disclosure or discovery] is granted ... the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion including attorney's fees." Courts in this district have awarded sanctions pursuant to Rule 37 when defendants fail to participate in post-judgment discovery. *See Iron Worker St. Louis Dist. Council Annuity Trust v. DKW Constr. Co. Inc*, No. 4:10CV00192JCH, 2010 WL 3620476, at *1 (E.D. Mo. Sept. 9, 2010) (ordering defendant to reimburse plaintiffs "their costs of conducting the first deposition, the cost of the second deposition and attorneys' fees" due to the defendant's blanket invocation of the Fifth Amendment); *Painters Dist. Council No. 2 v. Paragon Painting of Missouri, LLC*, No. 4:08CV01501ERW, 2011 WL 3891870, at *1 (E.D.

Mo. Sept. 1, 2011) (awarding plaintiffs' attorneys fees and costs for having to bring a motion to compel post-judgment discovery).

Thus, Dinosaur should submit documentation regarding its expenses and attorneys' fees incurred as a result of filing its Motion to Compel and its Response to the Motion to Quash.

### D.    BSI's Motion to Quash

As previously noted, BSI has filed a Motion to Quash, in which it argues that subpoenas duces tecum served by Dinosaur should be either quashed or modified, because they seek privileged or irrelevant information.  (Doc. 70.)  Specifically, BSI challenges subpoenas duces tecum served on the following entities: Thompson; Johnson; Mr. Eftink; Blitz; FOCUS Bank; and BSG.

Dinosaur responds that there is no basis to quash or modify the third-party subpoenas, each of which is aimed at discovering where Dinosaur's money and BSI's assets have gone to allow Dinosaur to collect on its judgment.  (Doc. 86.)

The Court's ruling on the Motion to Compel addresses the majority of the issues raised in the Motion to Quash, thereby rendering them moot.  The undersigned has overruled all of BSI's objections to Dinosaur's discovery requests, including the objection based on attorney-client privilege.  The only issue not previously discussed is BSI's claim that Mr. Eftink is entitled to accountant-client privilege.  The undersigned will address that claim now.

The subpoena served by Dinosaur to Mr. Eftink directed the production of "all documents relating to the accounting series provided by you to [BSI], including without limitation payment

for those series." (Doc. 71-5.) BSI argues that any communications between BSI and Mr. Eftink are protected by Missouri's accountant-client privilege.[3]

Missouri's accountant-client privilege is found in Mo. Rev. Stat. § 326.322.1, which states in relevant part "[e]xcept by permission of the client for whom a licensee performs services ... a licensee ... shall not voluntarily disclose information communicated to the licensee by the client relating to and in connection with services rendered to the client by the licensee. The information shall be privileged and confidential." Section 326.322.2 further provides that "[a] licensee shall not be examined by judicial process or proceedings without the consent of the licensee's client as to any communication made by the client to the licensee in person or through the media of books or account and financial records, or the licensee's advice, reports or working papers given or made thereon in the course of professional employment .... This privilege shall exist in all cases except when material to the defense of an action against a licensee." The purpose of the privilege "is to create an atmosphere where the client will provide all relevant information to the accountant without fearing future disclosure in subsequent litigation." *Ayers Oil Co. v. Am. Bus. Brokers, Inc.,* No. 2:09 CV 02 DDN, 2009 WL 2592154, at *4 (E.D. Mo. Aug. 20, 2009).

Dinosaur argues that BSI has waived their accountant-client privilege on multiple occasions. First, Dinosaur contends that BSI waived the privilege by putting BSI's financial health directly at issue in this case when it argued that it has lost millions in revenue and income due to Dinosaur's alleged nondisclosures. Dinosaur claims that BSI has also placed at issue multiple loans and the repayment thereof with Dinosaur's money, as its explanation for no longer

[3]BSI also objected based on the lack of temporal limitation, arguing that the subpoena should be limited to documents after October 30, 2018. Pursuant to the Court's ruling on the Motion to Compel, the undersigned overrules this objection.

17

possessing Dinosaur's funds.  Finally, BSI argues that Dinosaur waived the privilege in its own Motion to Quash, because it concedes that Dinosaur should be permitted to obtain information from Mr. Eftink.

The Court agrees that BSI has waived the accountant-client privilege.  It is well-settled that, under Missouri law, a party may waive its privileges by placing the subject matter of the privileged communication "at issue" in the litigation.  *See, e.g., State ex rel. Sw. Bell Publ'n v. Ryan*, 754 S.W.2d 30, 32 (Mo. Ct. App. 1988) ("at issue" waiver of accountant-client privilege); *Matthes v. Wynkoop*, 435 S.W.3d 100, 110 (Mo. Ct. App. 2014) ("at issue" waiver of attorney-client privilege).  BSI placed its finances at issue when it argued in its Counterclaim that it lost revenue and income due to Dinosaur's alleged misrepresentations.  BSI has also placed at issue multiple loans and their repayment, as its explanation for no longer possessing Dinosaur's funds.  Further, BSI has repeatedly placed blame on Mr. Eftink for BSI's failure to produce relevant financial documents explaining the disposition of Dinosaur's funds while at the same time volunteered Mr. Eftink to prepare an accounting of the disposition of the funds at issue in this case.  BSI has, therefore, waived any privilege which may have otherwise attached to such documents.

Thus, BSI's Motion to Quash will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bancservices International, LLC's Motion to Quash or Modify Subpoenas or for Protective Order (Doc. 70) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff Dinosaur Merchant Bank Limited's Motion to Compel (Doc. 77) is **granted as set out above**.

18

**IT IS FURTHER ORDERED** that Defendant Bancservices International, LLC shall, no later than **September 10, 2020** provide complete responses to interrogatories and produce all documents to Plaintiff Dinosaur Merchant Bank Limited as set out in this Memorandum and Order.

**IT IS FURTHER ORDERED** that, no later than **September 22, 2020**, Plaintiff Dinosaur Merchant Bank Limited shall file a verified statement of their reasonable expenses and attorneys' fees incurred in filing their Motion to Compel.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of September, 2020.