UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DINOSAUR MERCHANT BANK LIMITED, )
                                      )
                 Plaintiff,        )
                                        )
v.                                  )    Case No.  1:19 CV 84 ACL
                                        )
BANCSERVICES INTERNATIONAL LLC,   )
                                        )
                 Defendant.      )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant/Counterclaim Plaintiff Bancservices International, LLC's ("BSI") Motion for Leave to File Second Amended Counterclaim.  (Doc. 95.)  Dinosaur opposes BSI's Motion.  (Doc. 103.)

**I.**    **Background**

The factual background of this case is set out in detail in the Court's December 6, 2019 Order, and will be repeated here only to the extent necessary.  (Doc. No. 33.)  Plaintiff Dinosaur asserted claims of breach of contract, breach of good faith and fair dealing, and conversion based on BSI's withholding of $3,469,718.26 of funds from a failed transaction ("Transaction") for the purchase of crude oil.  The Transaction was initiated by Dinosaur under an International Payment Services Agreement ("IPSA") executed between the parties.   In short, Dinosaur's client Barnett Capital Bank requested the transfer of funds for the purpose of lifting a Curacao Court-imposed attachment and enabling Tipco Asphalt Public Company Limited ("Tipco"), a Thai company, to purchase crude oil from Petroleos de Venezuela, S.A. ("PdVSA"), a Venezuelan company.

BSI filed a Counterclaim, in which it asserted claims of fraud, breach of contract, and indemnity related to the Transaction.  The crux of the Counterclaim was that Dinosaur failed to

disclose information that would have raised compliance concerns and BSI would not have agreed to the Transaction had this information been disclosed.

On December 6, 2019, the Court granted Dinosaur's Motion for Judgment on the Pleadings.  The Court held that BSI was in breach of the IPSA for retaining the $3,469,718.26, as there was no provision in the IPSA allowing for the retention of funds from failed transactions. The Court further found that BSI failed to state a claim for fraud, breach of contract, or indemnity.

BSI requested that the Court reconsider its December 6, 2019 Memorandum and Order with respect to BSI's Counterclaim for fraud and indemnity.  On January 8, 2020, the Court granted BSI's Motion in part, in that BSI was given leave to file a proposed amended complaint. (Doc. 41.)  On January 15, 2020, BSI filed its Proposed Amended Counterclaim (Doc. 43-2), asserting claims of fraud (Count I), negligent misrepresentation (Count II), and indemnity (Count III).  In response, Dinosaur filed a Motion to Dismiss the Proposed Amended Complaint.  (Doc. 45).  On April 17, 2020, the Court found that BSI's Proposed Amended Counterclaim cured the deficiencies previously identified, and therefore denied Dinosaur's Motion to Dismiss.  (Doc. 47.)

BSI now seeks leave to file a Second Amended Counterclaim, adding facts and adding a claim for tortious interference with business expectancy.  Dinosaur opposes BSI's motion to file a Second Amended Counterclaim.  Alternatively, Dinosaur seeks dismissal of the Proposed Second Amended Counterclaim in its entirety.

## II.    Legal Standard

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend a pleading once as a matter of course within twenty-one days after serving the pleading, or, in all

other cases, with written consent of the opposing party or by leave of court.  Fed. R. Civ. P.

15(a).  Whether to grant a motion for leave to amend is "left to the sound discretion of the district

court."  *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016)

(quotation marks and citation omitted).  "The court should freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  Under this liberal standard, "[a] district court may deny

leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

non-moving party, or futility of the amendment."  *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th

Cir. 2013) (citation and internal quotations omitted).

## III.    BSI's Proposed Second Amended Counterclaim

BSI's second amended counterclaim is alleged to serve two purposes: (1) to add

additional facts relating to BSI's fraud and negligent misrepresentation claims; and (2) to add a

claim of tortious interference with a business expectancy.  BSI alleges that Dinosaur will not be

prejudiced by a second amendment because the facts underlying BSI's proposed claims are well-

known to Dinosaur.  Additionally, BSI alleges that the proposed amendments do not materially

alter the existing factual allegations but merely provide additional details of the business

relationships allegedly adversely affected by the failed transaction.

BSI's tortious interference claim arises out of a relationship that BSI had with Global

Wire Limited ("Global Wire").  BSI indicates that Global Wire conducts money transfers for BSI

through ING Slaski Bank ("ING").  BSI alleges that prior to the failed transaction under the

IPSA, ING allowed Global Wire to utilize a preferred exchange rate, based on Global Wire's

history of successful, legal transactions.  BSI alleges that following the failed transaction, ING

withdrew the preferred exchange rate offered to Global Wire, resulting in BSI losing its

3

reasonable business expectancy.  BSI further alleges that recently received discovery from Dinosaur revealed additional material information showing that Dinosaur knew of BSI's business expectancy.

In its opposition to BSI's Motion, Dinosaur first argues that the Court should use its discretion to deny leave to file the Second Amended Counterclaim, because BSI's motion would cause undue delay, and is being pursued in bad faith and with dilatory motive.  Dinosaur also argues that "BSI's effort to bolster its fraud claim actually underscores the deficiencies allegations of fraud, negligent misrepresentation, and indemnity."  (Doc. 103 at p. 7.)  Finally, Dinosaur contends that "BSI's tortious interference claim, intertwined with its fraud claim, fails to plead an actionable tortious interference claim."  *Id.* at p. 13.

A.      **Undue Delay/Bad Faith**

Dinosaur argues that BSI has not, as of this filing, paid a single dollar of the judgment it owes to Dinosaur.  Dinosaur contends that BSI nonetheless wants to claim damages based upon "mere speculation that business involving unrelated parties did not take place because of some alleged changed relationship between Global Wire and ING Slaski"  (Doc. 103 at p. 11.)  According to Dinosaur, permitting BSI to amend its Counterclaim would only result in more delay.  Dinosaur therefore argues that BSI falls short of establishing the "justice" triggering a court's discretion to amend.

The Court disagrees that granting BSI leave to amend its Counterclaim would cause undue delay, or that it is being pursued in bad faith or with dilatory motive.  Significantly, BSI's request to amend its counterclaim is timely pursuant to the Amended Case Management Order. (Doc. 81).  Although this is the second amendment to the counterclaim, Dinosaur has not shown that the amendment will cause undue delay or prejudice.  Additionally, there is no indication that

4

BSI's motion for leave is being pursued in bad faith.  Dinosaur alleges that BSI and Global Wire are "run by the same individuals."  The fact that BSI seeks to add a claim involving a corporate entity with the same leadership as BSI does not establish bad faith.  Thus, the Court will not deny BSI's Motion on the basis of undue delay, bad faith, or a dilatory motive.

> ### B.     Tortious Interference Claim

Dinosaur next argues that BSI should be denied leave to amend its counterclaim due to futility, as the proposed Second Amended Counterclaim fails to state a claim for tortious interference with business expectancy.

Generally, a movant's proposed amendments are considered futile if the claims are "duplicative," "frivolous," or "otherwise meritless."  *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016) (citations omitted); *see also Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) ("When the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

A complaint must be dismissed for failure to state a claim under Rule 12(b)(6) if it does not plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 560 (2007).  A petitioner need not provide specific facts to support his allegations, *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level."  *Schaaf v. Residential Funding Corp.,* 517 F. 3d 544, 549 (8th Cir. 2008), *cert. denied,* 129 S.Ct. 222 (2008) (quoting *Twombly,* 550 U.S. at 555-56 & n. 3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Scheuer v. Rhodes,* 416 U.S. 232 (1974); *Kottschade v. City of Rochester,* 319 F.3d 1038, 1040 (8th Cir. 2003). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content...allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole v. Homier Dist. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir. 2005)).

To plead a claim for tortious interference with a contract or business expectancy, the count at issue here, a plaintiff must plead facts that show: "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012); *accord Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. banc 2017).

Dinosaur argues that BSI has failed to plausibly allege all five necessary elements. Because the Court finds that BSI has failed to sufficiently allege the third element—intentional interference that caused a breach of any contract or relationship—the Court will not address the remaining elements.

The third element of a tortious interference claim under Missouri law has two parts. First, it requires intentional interference by the defendant, and, second, it requires that the defendant's intentional interference caused a breach of the contract or of a relationship. *Willert*

*Home Products*, No. 4:20-cv-01151-MTS, slip op. at 2 (E.D. Mo. 2021) (citing *Bishop & Assoc., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. 2017)).   In other words, to satisfy the third element, a defendant must interfere to such a degree that it causes a breach that would not have occurred but for a defendant's interference.  *See, e.g., Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 670 S.W.2d 895, 905 (Mo. Ct. App. 1984) (noting tortious interference requires defendant to have "actively and affirmatively [taken] steps to induce a breach"); *Fabricor, Inc. v. E.I. DuPont de Nemours & Co*., 24 S.W.3d 82, 93 (Mo. Ct. App. 2000)  ("To establish the third element of a tortious interference claim, the plaintiff must show that the defendant's acts induced or caused a breach of the relationship.").  A 'but for' test is applied to determine whether the acts of a party caused the breach of the relationship in question.  In this case, the two-step approach requires consideration of whether Dinosaur, 1) actively and affirmatively took steps to induce the breach; and, if so, whether 2) the relationship would not have changed absent Dinosaur's interference.  *Id*. at 93-94.

       In support of the third element, BSI alleged that Dinosaur's interference with BSI's reasonable business expectancy was intentional, or alternatively, Dinosaur "had knowledge that the Transaction was substantially certain to interfere with [BSI's] reasonable business expectancy."  (Doc. 95-1 at ¶ 55.)  BSI further alleged:

> The Transaction, initiated by Dinosaur, interfered with [BSI's] business expectancy to continue utilizing Global Wire to conduct currency exchanges.  Specifically, upon information and belief, and unbeknownst to [BSI], the Transaction was *a fraudulent scheme to avoid international sanctions and/or a scheme to commit money laundering* which, upon discovery of the same, was rejected for compliance reasons.

*Id*. at ¶ 53 (Emphasis added.).

       While the facts pled by BSI articulate the loss of a business expectancy following the failure of the Transaction, BSI does not plead sufficient facts to demonstrate *intentional*

7

*interference* by Dinosaur.  BSI failed to allege active and affirmative steps taken by Dinosaur to induce the breach.  As noted by Dinosaur, BSI continues to express uncertainty as to why the Transaction failed.  No facts have been pled to support that Dinosaur intentionally interfered with BSI's relationship with Global Wire (or ING) in a manner that resulted in the loss of the preferred exchange rate.  The language in the Second Amended Complaint is merely speculative as to the third element.  As such, BSI has failed to state a claim for which relief may be granted.

Because BSI's tortious interference with a business expectancy claim would not survive a motion to dismiss, the addition of this claim would be futile.  Thus, BSI's motion for leave to add a tortious interference with business expectancy claim will be denied.

### C.   Other Claims

Dinosaur argues that BSI's effort to bolster its fraud claim underscores the deficiencies of its fraud, negligent misrepresentation, and indemnity claims.  Dinosaur states that BSI "cannot point the Court to a single document that supports its belief that Dinosaur acted wrongfully." (Doc. 103 at p. 12.)  Dinosaur therefore requests that the Court either deny the motion to file the proposed Second Amended Counterclaim or reconsider its prior determination and dismiss those claims sought to be amended.

Dinosaur's requests will be denied.  BSI's motion to amend its counterclaim was timely and was made without evidence of bad faith or intentional delay.  The Court has already found that BSI's fraud, negligent misrepresentation, and indemnity claims state claims for which relief can be granted and declines to reconsider that determination.  If Dinosaur believes BSI is unable to support its claims after discovery is concluded, then Dinosaur may file a motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that BSI's Motion for Leave to File Second Amended Counterclaim (Doc. 95) is **denied in part and granted in part**.

**IT IS FURTHER ORDERED** that BSI is **denied** leave to add a claim of tortious interference with a business expectancy.

**IT IS FURTHER ORDERED** that BSI is **granted** leave to file a Second Amended Counterclaim adding facts relating to its fraud and negligent misrepresentation claims as set out in the proposed Second Amended Counterclaim.


/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2021.

9