UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DINOSAUR MERCHANT BANK LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.  1:19 CV 84 ACL |
| | ) |
| BANCSERVICES INTERNATIONAL LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Dinosaur Merchant Bank Limited's

("Dinosaur") Motions to Compel (Docs. 97, 100) and Motion for Sanctions (Doc. 121).  These

matters are fully briefed and ripe for disposition.

**I.      Background**

On April 17, 2020, the Court entered judgment in favor of Dinosaur on its Complaint in

the amount of $3,469,718.26, exclusive of costs, attorneys' fees, and prejudgment interest.  (Doc.

49.)  On the same date, the Court found that BSI's Proposed Amended Counterclaim cured the

deficiencies previously identified, and therefore denied Dinosaur's Motion to Dismiss.  (Doc.

47.)

Both parties filed motions related to post-judgment discovery disputes.  (Docs. 70, 77.)

On September 2, 2020, the Court issued a Memorandum and Order denying BSI's Motion to

Quash or Modify Subpoenas and granting Dinosaur's Motion to Compel.  (Doc. 92.)  The

undersigned found that Dinosaur had properly propounded post-judgment discovery on BSI, and

that BSI failed to provide the requested discovery necessary to enforce Dinosaur's judgment.

BSI was directed to provide complete responses to interrogatories and produce all documents to Dinosaur as set out in the Memorandum and Order no later than September 10, 2020.

On October 2, 2020, Dinosaur filed the instant Motion to Compel Documents from Third Parties, which relates to Dinosaur's attempt to recover funds to satisfy its judgment. (Doc. 97.) A week later, Dinosaur filed a Motion to Compel BSI to Respond More Fully to Discovery regarding BSI's Counterclaim. (Doc. 100.) Finally, on October 29, 2020, Dinosaur filed a Motion for Sanctions, in which it argues that BSI violated the Court's September 2, 2020 Order compelling post-judgment discovery. (Doc. 121.)

## II.    Standard

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action... the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit." Fed. R. Civ. P. 26(b)(1). Courts construe Rule 26(b)(1) broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Given that the [FRCP] allow[s] for broad discovery, the burden is typically on the party resisting discovery to explain why discovery should be limited." *Cincinnati Ins. Co. v. Fine Home Managers, Inc.,* No. 4:09CV234 DJS, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010). However, courts should be mindful that the scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation. *See, e.g., Mallak v. Aitkin County*, No. 13CV2119DWF(LIB), 2016 WL 8607391, *6, (D. Minn. June 30, 2016). This standard applies to requests for production between litigants pursuant to Federal Rule of Civil Procedure 34, as

2

well as to subpoenas *duces tecum* under Federal Rule of Civil Procedure 45.  *See* Fed. R. Civ. P.

34; *Prime Aid Pharmacy Corp. v. Express Scripts, Inc*., No. 4:16CV1237, 2017 WL 3129807, *1

(E.D. Mo. July 24, 2017) (applying Rule 26(b) to subpoena *duces tecum*).

A party responding to a request for production under Federal Rule of Civil Procedure 34

or to a document subpoena under Federal Rule of Civil Procedure 45 must produce material in its

possession, custody, or control, to the extent such material is otherwise relevant and

discoverable.  *See* Fed. R. Civ. P. 34(a)(1); 45(a)(1)(iii).

Rule 37 of the Federal Rules of Civil Procedure provides "[a] party seeking discovery

may move for an order compelling an answer, designation, production, or inspection" if, *inter*

*alia,* a party fails to answer an interrogatory or fails to produce documents.  Fed. R. Civ. P.

37(a)(3)(B).  "[E]vasive or incomplete disclosure, answer, or response must be treated as a

failure to disclose, answer, or respond."  *Id.*  Further, Rule 37(b)(2) allows the Court to

impose sanctions upon those parties who fail to comply with discovery orders.

## III.    Discussion

The Court will address Dinosaur's pending motions in turn.

### A.  Motion to Compel Documents from Third Parties (Doc. 97)

Dinosaur argues that BSI's two shareholders—Bancservices Group, Inc. ("BSG") and

Thompson International LTD ("Thompson")—and its accountant, Theodore Eftink, have failed

to comply with the subpoenas *duces tecum* served on them on June 25, 2020 ("Subpoenas").  The

Subpoenas seek information regarding assets in the possession of the shareholders of BSI or

other related persons in order to satisfy the judgment against BSI.  These subpoenas were the

subject of BSI's Motion to Quash, which this Court denied on September 2, 2020.  Dinosaur

3

states that counsel for the parties[1] held a meet and confer a few weeks prior to the Court's ruling, during which counsel for BSI agreed that the third parties would produce some of the requested documents within certain limits.  Dinosaur indicates that, despite this agreement, BSI has not produced the documents.

Third Parties BSG, Thompson, and Eftink ("Third Parties") have filed a Joint Memorandum in Opposition to Dinosaur's Motion to Compel.  (Doc. 107.)  In their Memorandum, the Third Parties make the same objections to the Subpoenas that BSI made in support of its Motion to Quash.  Specifically, Eftink argues that he is prohibited from disclosing any information relating to accounting services by Missouri's accountant privilege, as set forth in Mo. Rev. Stat. § 326.322.1.  Counsel for Eftink states that he is "very mindful of this Court's opinion on the accountant privilege objections set forth in BSI's Motion to Quash," yet "Eftink was not a party to that motion or order and [counsel] has an independent duty to assert the privilege on behalf of his clients to ensure he has fully complied with his legal obligations under section 326.332.1."  (Doc. 107 at p. 2.)  BSG and Thompson argue only that they "assert the same objections to the subpoenas set forth by BSI in its Motion to Quash and Memorandum in Support thereof."  *Id.* at 3.  They state that they are asserting these objections "simply to preserve BSG and Thompson's positions on the objections as they have not previously been asserted on behalf of BSG or Thompson."  *Id.*

The Third Parties offer no argument in opposition to Dinosaur's Motion to Compel, and instead seek to preserve their previously raised objections.  This Court has rejected the objections to the Subpoenas made by the Third Parties and declines to reconsider those findings.  Thus,

---

[1]The same counsel for BSI—Johnson, Schneider & Ferrell—also represents the third parties.

Dinosaur's Motion to Compel will be granted and the Third Parties will be directed to comply with the June 25, 2020 Subpoenas.

**B. Motion to Compel Discovery from BSI (Doc. 100)**

This Motion relates to Interrogatories and Requests for Production Dinosaur served on BSI on June 17, 2020.  (Docs. 101-3, 101-4.)

*Background*

BSI responded to Dinosaur's Interrogatories and Requests for Production on August 10, 2020.  (Doc. 101-5.)  BSI objected to Interrogatory Numbers 1, 2, 3, and 11; and Requests for Production Numbers 8 through 12.

On August 17, 2020, counsel for Dinosaur notified BSI counsel that Dinosaur was objecting to BSI's responses.   In an effort to resolve the discovery disputes, phone conferences were held between counsel for Dinosaur and counsel for BSI on August 25 and 28, 2020.

On September 11, 2020, BSI provided supplemental interrogatory answers, as well as supplemental document request responses.  (Docs. 101-12, 101-14.)

Dinosaur filed the instant Motion to Compel on October 9, 2020.  Dinosaur argues that BSI's responses are deficient, in that BSI has not produced evidence supporting its allegations in the Counterclaim that it suffered damages.  Dinosaur points to two main deficiencies.  First, Dinosaur contends that BSI refuses to identify the persons BSI claims were clients from whom BSI lost income.  Second, Dinosaur states that BSI has failed to provide documents or information regarding the circumstances of the "preferred exchange rate" that is at the core of the Counterclaim.

In its Response in Opposition to Dinosaur's Motion to Compel, BSI states that it has provided detailed information relating to its damages.  BSI objects to Dinosaur's requests that are the subject of this instant Motion on the basis of either confidentiality concerns or privilege.

### Discussion

The parties' disputes relate to BSI's responses to Interrogatory Numbers 1, 2, 3, and 11; and Requests for Production of Documents Numbers 8, 9, 10, 11, and 12.  The undersigned will discuss these requests in turn.

### 1.  Interrogatory No. 1

Interrogatory 1 quoted the following statement in BSI's Rule 26 Initial Disclosures:

As a result of the transaction with Dinosaur being cancelled, the financial institution utilized by Bancservices to facilitate international transfers of money ceased providing Bancservices a preferred exchange rate of approximately 1.5% to 3% for Bancservices' transfers to/from Euros from/to United States Dollars. This resulted in Bancservices losing the ability to collect commissions on an amount of transactions that is still being investigated.

(Doc. 101-3 at p. 3.)  Dinosaur then asked BSI to "[d]escribe the facts and circumstances relating" to that statement and BSI's lost "ability to collect commissions" and to name the financial institution as well as the "parties involved."  *Id.*

In its Answer, BSI objected to this Interrogatory as seeking "confidential and proprietary information that is prohibited from disclosure pursuant to contractual obligations."  (Doc. 101-5 at p. 3.)  Subject to this objection, BSI provided a lengthy response in which it identified the financial institution that provided the "preferred exchange rate" as "ING Slaski Bank" and revealed that the legal relationship ING Slaski had was with a company named "Global Wire Limited."  *Id.* BSI represented that Global Wire "handled BSI's international currency exchanges pursuant to a contractual relationship."  *Id.*  BSI stated that ING Slaski "provided Global

6

Wire/BSI a preferred exchange rate for facilitating transfers from Euros to USD or USD to Euros" and stated that the rate "ranged from 1.88% to 2.5% less than the standard exchange rate." *Id.* BSI also stated that there were four clients or potential clients who were affected by the change in the "preferred exchange rate," but BSI did not identify them.

Dinosaur objected to BSI's refusal to disclose the names of the clients upon which it was basing damages.

In its Supplemental Answer to Interrogatory 1, BSI referred to three of the clients using numbers, and it provided a chart that summarized total amounts BSI alleged as constituting its damages. (Doc. 101-12 at p. 3-4.) The supplemental answer repeated its earlier objection. *Id.*

Dinosaur argues that BSI's objection to identifying the "parties involved" is unfounded. Dinosaur further argues that BSI's referral to clients by numbers, without identifying them or the facts and circumstances relating to them, fails to provide adequate disclosures.

BSI responds that requiring the disclosure of client information would result in the disclosure of highly sensitive information to Dinosaur, a financial institution that is a competitor to the clients of BSI. BSI contends that this would therefore be harmful to BSI's clients, who are non-parties to this dispute. BSI indicates that it has notified its clients of Dinosaur's request for this information, and those clients have insisted that they do not wish their information to be disclosed to Dinosaur.

The identities of the parties involved in the transactions is undoubtedly relevant to BSI's Counterclaim. BSI alleges it suffered millions of dollars in damages when it lost the "preferred exchange rate" with ING Slaski. Dinosaur seeks the identities of the clients that BSI asserted were the basis of its lost profits due to the change in rate. Dinosaur is entitled to the information it seeks in order to defend against BSI's claims.

With regard to BSI's confidentiality argument, the Court granted the parties' Joint Motion for Protective Order and entered a protective order on August 16, 2019.  (Doc. 27.)  The protective order in place affords sufficient protection to BSI's confidentiality and proprietary concerns.  *See GP Indus., LLC v. Eran Indus.,* No. 8:06CV50, 2006 WL 3290306, at *4, (D. Neb. Nov. 13, 2006) (citing *Federal Open Mkt. Comm. v. Merrill,* 443 U.S. 340, 362 (1979)) ("Merely because documents may contain confidential information does not foreclose disclosure, confidentiality does not equate to privilege."); *Impact, LLC v. United Rentals, Inc.,* No. 4:08CV00430, 2009 WL 413713, at * 3 (E.D. Ark. Feb. 18, 2009) ("A protective order has now been issued, so the objection that the information is confidential and proprietary is overruled.").

Further, there is no basis to find a contractual bar to disclosure.  It is true the redacted contracts between BSI and its clients BSI disclosed to Dinosaur all contain confidentiality provisions.  (Docs. 101-16 at p. 6; 101-17 at p. 6; 101-18 at p. 6; 101-19 at p. 6.)  In each case, BSI's obligation is to give the clients notice of the civil litigation demands and leave to the clients to decide whether to seek a protective order from the court.  *Id.*  None of these clients have sought such a protective order.

The Court will therefore overrule BSI's objections to Interrogatory 1.   BSI must provide Dinosaur with the identities of the parties to which it refers in its Response.

## 2.   Interrogatory No. 2

Interrogatory 2 requests the following information regarding the "preferred exchange rate":

> What are the circumstances surrounding how Bancservices first received a
> "preferred exchange rate"; how was this "preferred exchange rate" determined;
> how long did Bancservices maintain the "preferred exchange rate"; what were the
> specific interactions and communications that caused the change in Bancservices
> having this "preferred exchange rate"; and what is the new "exchange rate."

(Doc. 101-3 at p. 3.)

In its Answer, BSI made the same confidentiality objection that it raised with regard to

Interrogatory 1.  BSI then stated as follows:

> BSI contracted with Global Wire to provide international currency exchanges for
> its clients. As a part of standard banking practice, ING required a history of
> successful transactions before treating Global Wire as a preferred institution.
> Global Wire successfully completed a number of transactions beginning in 2016
> until ING began providing the preferred rate in the fall of 2018. Shortly after ING
> provided the preferred rate, the transaction at issue in this lawsuit was rejected
> and ING no longer provided the preferred rate. Instead, ING would only offer the
> exchange rate granted to non-preferred customers, a rate that varies.

(Doc. 101-5 at p. 4.)  BSI did not provide a supplemental answer for Interrogatory 2.

Dinosaur argues that BSI's response is inadequate because it fails to provide any

description of the circumstances of how the "preferred exchange rate" was received and

determined, when it was obtained, how long it was in existence, what the communications were

that caused it to change, or how the current "exchange rate" is determined.  It further contends

that BSI's confidential and contractual objections should be rejected for the same reasons

discussed with regard to Interrogatory 1.

BSI does not address the alleged shortcomings of its response to Interrogatory 2.  Rather,

it relies on its general confidentiality argument made in reference to Interrogatory 1.

BSI's confidentiality objections are overruled.  As discussed above, the protective order

in place in this case adequately addresses these concerns.

The undersigned agrees that BSI's response to Interrogatory 2 is incomplete.  The

response reveals that BSI was a beneficiary of the preferred rate Global Wire secured from ING.

The response does not, however, provide the date the rate was granted, the date the rate was

terminated, what the preferred rate was, the communications resulting in the change of rate, and

how the current rate is determined.  Dinosaur is entitled to this information, as the change in rates is the sole basis of BSI's alleged damages.

Thus, BSI will be compelled to provide complete responses to Interrogatory 2.

### 3.  Interrogatory No. 3

Interrogatory 3 asked BSI to "explain how Bancservices' relationship changed with the unidentified financial institution(s) referenced in paragraphs 34 and 44 of your Amended Counterclaim and how this was the fault of Dinosaur."  (Doc. 101-3 at p. 3.)

BSI made the same objection that had been asserted for Interrogatory 1, and then referred to the Interrogatory 1 answer.  (Doc. 101-5 at p. 4.)

In its Supplemental Answer to Interrogatory 3, BSI repeated its same objection, then added that "BSI no longer provides currency exchanges for these clients and BSI, through Global Wire, no longer conducts business with ING Slaski."  (Doc. 101-12 at p. 4.)

Dinosaur argues that BSI's failure to provide any substantive detail as to how BSI's relationship with ING Slaski and Global Wire changed and how the fault can be attributed to DMBL fails to provide adequate disclosure.  Dinosaur contends that BSI's confidentiality objection is meritless.

The Court finds that BSI's Answer to Interrogatory 3 is deficient.  BSI's objection on the basis of confidentiality is overruled for the same reasons discussed with regard to Interrogatories 1 and 2.  BSI must fully respond to Interrogatory 3 with details regarding its relationship with ING Slaski and Global Wire.

### 4.  Interrogatory 11

Interrogatory 11 provides as follows:

> Describe in detail the facts and circumstances that form the basis of Bancservices'
> allegation in paragraph 44 of its Amended Counterclaim that Dinosaur's
> purported conduct has led directly to "lost revenue and income of Bancservices
> and is a direct and proximate result of the misrepresentations made by Dinosaur
> set forth herein," including identifying such counterparties, customers, business
> partners, clients, and prospective clients, what specific business opportunities
> were lost, how Bancservices knows that such business opportunities were lost as a
> result of Bancservices' inability to consummate Dinosaur's payment order, how
> such clients became aware of Dinosaur's effort to transmit the funds in question
> through Bancservices, what specific complaints such other clients made leading to
> the lost business opportunities, whether the lost business opportunities were due
> to Bancservices' lack of success in transmitting the funds or its refusal to return
> funds to Dinosaur, the value of such lost business opportunities to date, and how
> Bancservices' has calculated the value of lost business opportunities.

(Doc. 101-3 at p. 6.)

In its Answer, BSI objected to Interrogatory 11 on the basis it was "vague, confusing, and invades the attorney-client privilege and work product doctrine."  (Doc.  101-5 at p. 9.)  Subject to these objections, BSI referred to the allegations in BSI's Amended Counterclaim and in response to Interrogatory 1.  *Id.*  BSI further argued that Interrogatory 11 was a "premature contention interrogatory."  *Id.*  BSI stated that it "continues to investigate this matter through discovery and otherwise," and will supplement this response in accordance with the Federal Rules of Civil Procedure.  *Id.*

In its Motion to Compel, Dinosaur argues that BSI's confidentiality and contractual objections should be denied for the same reasons discussed with regard to Interrogatories 1, 2, and 3.  Dinosaur contends that BSI's objections to Interrogatory 11 as vague and confusing are also meritless, as Dinosaur explained what it was seeking in the meet and confer exchanges. Dinosaur next argues that even if part of Interrogatory 11 can be construed as a "contention interrogatory," that objection should be rejected, as Dinosaur is seeking information that BSI should have already possessed, not information that BSI would need to obtain via discovery.

11

Finally, Dinosaur argues that BSI's attorney-client privilege and work product objections lack merit as Dinosaur is not seeking any confidential communications between BSI and counsel, or is it seeking work product.

In its Response, BSI does not specifically address Interrogatory 11. Rather, it only makes a general argument regarding its confidentiality objection as discussed above.

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).

The term "contention interrogatories" refers to several types of questions. They may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts. They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations. *In re Grand Casinos, Inc.*, 168 F.R.D. 615, 618 (D. Minn. 1998) (citing *McCarthy v. Paine, Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996) (emphasis in original)). "Contention interrogatories are, generally speaking, permissible under Rule 33(a)." *Leeb v. Charter Communications, Inc.*, No. 4:17CV2780 SRC, 2019 WL 4576450 at *5 (E.D. Mo. Sept. 20, 2019) (citing *Starcher v. Correctional Med. Sys., Inc.*, 144 F.3d 418, 421, n.2 (6th Cir. 1998)). "Contention interrogatories may be helpful 'in that they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense.'" *Bituminous Cas. Corp. v. Scottsdale Ins. Co.*, No. 1:12CV84 SNLJ, 2013 WL 1411544 at *1 (E.D. Mo. Apr. 8, 2013).

"[C]ontention interrogatories are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case."  *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006). "Thus, ... interrogatories may 'properly ask for the 'principal or material' facts which support an allegation or defense.'  In addition, interrogatories may seek the identities of knowledgeable persons and supporting documents for the 'principal' or 'material' facts supporting an allegation or defense."  *Moses*, 236 F.R.D. at 674.

A number of district courts in this circuit have held, however, that contention interrogatories need not be answered until discovery is complete or nearly complete in accordance with Fed. R. Civ. P. 33(a)(2)."  *Coleman v. Dental Organization for Conscious Sedation, LLC*, No. 4:10CV798 TIA, 2011 WL 2600407 at * 1 (citing *Helmut v. Butterball, LLC*, No. 4:08CV343 JLH, 2010 WL 4537096 at *1 (E.D. Ark. Nov. 3, 2010)); *see also Cairo Marine Serv., Inc. v. Homeland Ins. Co. of New York,* No. 4:09CV1492 CDP, 2010 WL 4614693, at *3 (E.D. Mo. Nov. 4, 2010) (ordering party to respond to contention interrogatories where discovery was closed and interrogatories were reasonable in scope, appropriately timed, and relevant to the case).

First, the Court overrules BSI's confidentiality objections for the same reasons discussed with Interrogatories 1, 2, and 3.   BSI's attorney-client privilege and work product objections are also overruled, as Dinosaur is not seeking any confidential communications between BSI and counsel nor is it seeking work product.

The Court will next address BSI's objections that the Interrogatory is vague, confusing, and is an improper contention interrogatory.  The undersigned agrees that parts of Interrogatory 11 on its face are overly broad.  For example, the beginning of the Interrogatory requests that

BSI "describe in detail the facts and circumstances that form the basis of" BSI's allegation that Dinosaur's conduct has "led directly to 'lost revenue and income of Bancservices and is a direct and proximate result of the misrepresentations made by Dinosaur."   This statement is overly broad and requires BSI to provide a narrative account of its case.  Additionally, Dinosaur requests the following information: how BSI knows that such business opportunities were lost as a result of BSI's inability to consummate Dinosaur's payment order, how such clients became aware of Dinosaur's effort to transmit the funds in question through BSI, and whether the lost business opportunities were due to BSI's lack of success in transmitting the funds or its refusal to return funds to Dinosaur.  These requests also require a narrative account of BSI's case.  Further, BSI may require discovery in order to answer some of the requests, such as how clients became aware of the failed transaction between Dinosaur and BSI.

Many of Dinosaur's requests in Interrogatory 11, however, are specific and relevant.   For example, Dinosaur requests the following information: the identities of counterparties, customers, business partners, clients, and prospective clients; the specific business opportunities that were lost; the specific complaints clients made leading to the lost business opportunities; the value of lost business opportunities to date; and how BSI has calculated the value of the lost business opportunities.  These requests are sufficiently specific, clearly relevant to Dinosaur's defense, and involve information that should be in BSI's possession.  The meet and confer conferences as well as the instant pleadings have provided further clarification as to the information Dinosaur seeks.  As Dinosaur states in the instant Motion, it is seeking information to determine the "basis for its allegation that BSI had 'lost revenue and income,' from whom BSI has lost its income, and what complaints had been made to BSI from its clients."  (Doc. 101 at p. 15.)  Dinosaur is entitled to this information, as discussed above.

Thus, Dinosaur's Motion to Compel will be granted in part as to Interrogatory 11.  BSI is directed to respond to the following requests: the identities of counterparties, customers, business partners, clients, and prospective clients from whom BSI lost revenue and income; the specific business opportunities that were lost; the specific complaints clients made leading to the lost business opportunities; the value of lost business opportunities to date; and how BSI has calculated the value of the lost business opportunities.  BSI is further directed to supplement this response in accordance with the Federal Rules of Civil Procedure, as it becomes aware of more information regarding the circumstances of its alleged lost profits.

### 5.  Requests for Production of Documents 8-12

Dinosaur's Document Requests 8 through 12[2] seek documentation in support of the preferred exchange rate relationship and BSI's calculation of its damages.  (Doc. 101-4 at p. 4-5.)  BSI objected to these requests, asserting in each case that the documents being sought were "protected by the attorney-client privilege or work product doctrine," that the request was "vague, confusing, ambiguous, over broad, and unduly burdensome," and that the "documents . . . are confidential and proprietary."  (Doc. 101-6 at p. 5-7.)  BSI provided none of the requested documents.

After the meet and confer conferences, on September 11, 2020, BSI produced some documents to Dinosaur.  The documents were redacted to hide the name of the clients.  (Doc. 101-14 at p. 5-8.)

In its Motion to Compel, Dinosaur argues that BSI's objections should be overruled. Dinosaur states that BSI's disclosures contained no concrete information that would support its

---

[2] The Court will not discuss each request individually, as the parties' disputes apply generally to all the requests for production.

Counterclaim.  Rather, Dinosaur received "literally hundreds of nearly blank pages consisting of apparent bank records showing only dates and monetary amounts."  (Doc. 115 at p. 1; Doc. 101-20[3].)  Dinosaur requests that the Court direct BSI to produce unredacted documents responsive to each request.

BSI responds that Dinosaur's Requests 8-12, which ask for "[a]ll documents, in any form maintained, constituting and relating to…," are overly broad.  (Doc. 101-4 at p. 4-5.)  BSI argues that these broad requests would require the production of privileged communications between BSI and its attorneys and work product of counsel relating to the matters requested.

With regard to BSI's privilege objection, Dinosaur states that it is not seeking documents protected by the attorney-client privilege.  The Court agrees with Dinosaur that the documents requested—those supporting the "preferred exchange rate" and relating to the business with BSI's clients—would not be expected to include documents protected by attorney-client privilege or work product.  BSI's objections based on privilege and work product are, therefore, overruled.

BSI's objection based on confidentiality is overruled for the same reasons discussed with regard to Interrogatory 1.  The protective order in place in this case adequately protects BSI's clients' confidentiality.

Finally, the Court finds that BSI's overbreadth arguments lack merit.  Dinosaur sufficiently clarified their requests during the meet and confer telephone calls.  Counsel for Dinosaur states that he explained to BSI's counsel as follows:

> I made clear that as to the "preferred exchange rate" DMBL was seeking documents and information establishing when the "preferred exchange rate" was first obtained from what has now been revealed to be ING Slaski, a Polish

---

[3] Dinosaur provided a representative sample of the bank records in the document titled "Exhibit 18."  (Doc. 101-20.)

institution, how it was obtained, what the "preferred exchange rate" was, when it was lost or altered, why it was lost or altered, and to what it was altered.

(Declaration of Marc Frazier Scholl Doc. 101-2 at p. 3.)

Thus, BSI's objections to Requests 8 through 12 are overruled.  The Court therefore finds that the documents from which BSI redacted information must be produced again without the redactions.  BSI is further directed to produce any other documents responsive to these requests that are not privileged or attorney work product.

### C.  Motion for Sanctions (Doc. 122)

In its Motion for Sanctions, Dinosaur argues that BSI has violated the Court's September 2, 2020 Order compelling discovery by failing to provide discovery necessary to enforce Dinosaur's judgment.  Dinosaur requests that the Court dismiss BSI's Amended Counterclaim as a sanction pursuant to Federal Rule of Civil Procedure 37.

BSI responds that  Dinosaur's Motion should be denied because BSI has not violated the Court's Order.  BSI argues that Dinosaur should have sent more targeted interrogatories or requests, took depositions, or requested a meet and confer prior to bringing a Motion for Sanctions.  In the alternative, BSI argues that, even if BSI had violated the Order, dismissal of the Amended Counterclaim in its entirety is an inappropriate sanction.

### 1.  Discovery Disputes

The Court ordered BSI to produce documents responsive to all of the requests on which Dinosaur moved to compel (Nos. 1, 7, 10, 11, 13, and 15); and directed it to supplement its deficient responses to Interrogatory Numbers 6 and 12.

BSI provided supplemental responses to Dinosaur's discovery requests.  Dinosaur takes

17

issue with BSI's responses to the following requests: Interrogatory Numbers 6 and 12; and Document Request Numbers 1, 7, and 13.   The undersigned will discuss these disputes in the order addressed by the parties.

### *Interrogatory No. 12*

Interrogatory 12 asked BSI to "describe with specificity the methods by which you searched for documents responsive to the Requests for Production."  (Doc. 122-2 at p. 5.)  BSI initially objected to Interrogatory 12 on the basis of relevance and failed to provide any response. The Court overruled BSI's objection, finding that the information was relevant in determining whether BSI's efforts to obtain documents were reasonable.

In its Supplemental Answer to Interrogatory 12, BSI stated that it employed the following methods to search for responsive documents:

A. Searched Defendant's computer files for any electronically stored documents;

B. Corresponded with Defendant's accountant, Ted Eftink, requesting responsive documents in his possession;

C.  Corresponded with three different law firms who have previously provided legal services to Defendant to request any responsive documents they may have in their possession;

D. Contacted Focus bank to request loan documents and bank records in their possession;

E. Searched BSI emails for any responsive documents;

F. Reviewed any hard copy documents in BSI's possession that may be responsive;

G. Reviewed business account records for BSI;

H. Searched for BSI financial records on hand from previous years;

I.  Created an organizational chart to meet Plaintiff's requests; and

J. Created an Accounting of the funds at issue in this lawsuit.

(Doc. 122-8 at p. 5.)

18

Dinosaur notes that it argued in its Motion to Compel that any reasonable search must include a search of Glenn Ault's file because, as the owner of BSG and President of BSI, "Ault would be expected to have emails, paperwork and other records reflecting the movement of millions of dollars." (Doc. 122 at p. 5.) Dinosaur states that "the Court agreed and ordered that the 'requested information is relevant and must be disclosed by BSI.'" *Id.* (quoting Memorandum and Order, Doc. 92 at p. 6.) BSI argues that Dinosaur's Supplemental Answer to Interrogatory 12, stating that it conducted a search of "Defendant's computer files" and "searched BSI emails for any responsive documents," indicates that it defied the Court's Order by refusing to conduct the required search. Dinosaur further states that, because the production contains no emails at all from Ault's inbox, BSI violated the Order by failing to produce the search results.

BSI responds that Dinosaur's contentions are completely without merit. BSI notes that  it stated in its Supplemental Answer that it searched BSI emails, "which would necessarily include the emails of Glenn Ault and every other email account associated with BSI." (Doc. 123 at p. 4.)

First, the Court finds that BSI complied with the face of the Court's Order. As previously noted, the Court overruled BSI's relevancy objection and directed BSI to answer Interrogatory 12. Interrogatory 12 asked BSI to describe " the methods by which you searched for documents responsive to the Requests for Production." In its Supplemental Answer, BSI indicated the methods by which it searched for documents, including the search of BSI emails. Contrary to Dinosaur's suggestion, the Court never specifically directed BSI to search Mr. Ault's emails or produce Mr. Ault's emails. It is true that a reasonable search would include Mr. Ault's emails. BSI, however, responds that it did search Mr. Ault's emails. As such, BSI has complied with the Court's directive with regard to Interrogatory 12. The Court notes that this finding does not

relieve BSI of its obligation to produce any emails of Mr. Ault that are responsive to BSI's requests for production of documents.

### Request No. 7

Request Number 7 asks for the following:

All documents concerning taxes owed or paid by you or on your behalf to, or assessed against you, from January 1, 2018, to the present, including but not limited to complete copies of your federal (U.S.) and state (Missouri and other state) income tax returns for the years 2018 through the present, and all back-up materials, schedules and worksheets concerning such returns.

(Doc. 122-3 at p. 4.)

BSI initially objected to Request 7 on the basis of relevancy, and also represented that it had not filed taxes for the year 2019.  BSI later supplemented its Answer with a copy of tax returns for tax year 2018.   The Court agreed with Dinosaur that BSI had not fully responded to Dinosaur's request.  BSI was directed to produce "the full tax return information sought in Document Request No. 7," including a copy of tax year 2019 returns as soon as they are filed. (Doc. 92 at p. 7.)

In its Supplemental Answer, BSI stated that it "previously produced its full 2018 return and will supplement its response with its full 2019 return once said 2019 return is filed."  (Doc. 122-9 at p. 2.)

Dinosaur states in its Motion for Sanctions that its counsel wrote to counsel for BSI on September 25, 2020, inquiring as to when the 2019 tax filing would be produced.  Dinosaur states that BSI's counsel did not respond, and Dinosaur still does not have a copy of BSI's 2019 tax return.

In its Response, BSI states that it "recently filed its 2019 return and a copy has been produced to Dinosaur," thereby rendering this issue moot.  (Doc. 123 at p. 4.)

Dinosaur disputes that this issue is moot and instead argues that BSI has violated the Court's Order in the following ways: (1) BSI has not produced a tax return for the State of Missouri; (2) BSI did not produce its federal tax return "as soon as [it was] filed," as ordered, but only sent it in response to this Motion; (3) BSI did not produce the entire federal return, as it did not produce the referenced explanatory Statement Nos. 4, 29, 32; and (4) BSI has not produced any of the documents used in preparing the tax return.

The undersigned finds that BSI has violated the terms of the Court's Order with respect to Request Number 7 in the ways set out by Dinosaur above. The Court directed BSI to provide the "full tax return information sought in Document Request No. 7," which required both state and federal tax information and all supporting documentation. To date, BSI has not provided all the information ordered by the Court.

### *Interrogatory No. 6*

Interrogatory Number 6 asked BSI to: "identify each and every debt you have paid since October 30, 2018," and provide "(i) a description of the debt, (ii) an explanation of the type of debt, (iii) a statement of the amount owed, (iv) contact information for the person to whom or entity to which the debt was owed, and (v) the bank account to which it was paid." (Doc. 122-2 at p. 4.)

Dinosaur argued that BSI's initial response did not identify or describe the debts, identify the bank accounts to which the debts were paid, or provide adequate contact information for the recipient corporations. The Court agreed that BSI failed to respond adequately to Interrogatory No. 6, and ordered BSI to "supplement its response with detailed descriptions of the nature of the debt, the bank accounts to which these debts were paid, and more detailed contact information for Thompson and BSG." (Doc. 92 at p. 13).

21

In its Motion for Sanctions, Dinosaur argues that BSI's Supplemental Answer failed to comply with the Court's Order in the following ways: BSI removed information about the loans and refused to describe them; BSI's explanation regarding the repayment of the member loans is false; and BSI did not provide more detailed contact information for the recipients of Dinosaur's money.

BSI responds that it attempted to comply with the Court's Order by providing detailed information about the subject loans, including dates loans were paid, amounts paid, account numbers of the promissory notes that were paid, the corresponding loan numbers, the dates the loans originated, and the original principal amounts of the loans.  BSI states that it did not intend to remove information from its supplemental response; rather, the supplemental response was intended to incorporate the statement from the initial response.  BSI claims that Dinosaur's allegation that it provided false information is both without merit and irrelevant to the Court's Order compelling discovery.  Finally, BSI contends that it has provided sufficient contact information for the recipients of the funds at issue.

After reviewing the parties' briefs as well as BSI's responses to Interrogatory 6, the Court finds that the Supplemental Answer is deficient in two respects.  With regard to the Focus Bank loan, BSI's Supplemental Answer changed its answer to clarify that the January 29, 2019 payment represented the repayment of not one, but two Focus Bank-issued loans: 1) loan number 42315, a $750,000 loan issued November 14, 2013; and 2) loan number 84002768, "based on a Promissory Note dated September 2, 2016 in the original principal amount of $1,258,950.95." (Doc. 122-8 at p. 2-4.)  Dinosaur notes that one of the loans that BSI claimed funded its startup costs in August 2020—Focus Bank loan number 42315—was not issued to BSI; it was issued to Mr. Ault.  The promissory note for Focus Bank loan 42315, indicates that the loan was issued to

Ault and his wife and that "[t]he purpose of this loan is TO REFINANCE 3RD LIEN ON

ACRES IN MISSISSIPPI COUNTY, MISSOURI."  (Doc. 122-11 at p. 3.)  The Court agrees

with Dinosaur that this discrepancy requires further explanation on the part of BSI.

Second, BSI did not change its contact information for Thompson or BSG, despite the

Court's Order to provide "more detailed contact information for Thompson and BSG."  (Doc. 92

at p. 13.)  BSI acknowledges this omission, but claims to be "at a loss" as to what information

Dinosaur wants.

### Request 1

Request for Production 1 asked for "[a]ll documents and communications concerning the

current location, including the account number and any transfers thereof" of the funds BSI

withheld from Dinosaur.  (Doc. 122-3 at p. 2.)

BSI initially responded that "the above referenced funds were used in the ordinary course

of business of Bancservices International, LLC and/or previously paid to creditors of

Bancservices International, LLC."  (Doc. 122-5 at p. 2-3.)  The Court agreed with Dinosaur that

BSI's Response was incomplete and directed BSI to provide "both the accounting and the

requested documentation regarding the prior disposition of the funds."  (Doc. 92 at p. 14.)

In response to the Court's Order, BSI provided to Dinosaur an excel sheet entitled "Final

Tracing of Bancservices International LLC."  (Doc. 122-18.)  This document reveals transfers

made from a previously undisclosed account identified as "MB Financial 7579."  *Id.*  BSI has not

provided account numbers for any transferee, and has disclosed only four digits of its own MB

Financial account number.  Further, BSI admits that it did not produce any documents from the

MB Financial account until Dinosaur moved for sanctions.  Thus, BSI did not fully comply with

the Court's Order with regard to Request 1.

*Request 13*

Document Request Number 13 sought "[a]ll documents concerning debts paid by you since October 30, 2018."  (Doc. 122-3 at p. 5.)

BSI did not oppose Dinosaur's Motion to Compel regarding Request 13, and stated that it "fully intends to produce the requested documents as they relate to the three debts BSI has stated it has paid in its interrogatory response."  (Doc. 87 at p. 13.)  The Court granted the motion to compel and gave BSI five business days to "produce the loan documentation, as well as the other documents and information as set out" in the Order.  (Doc. 92 at p. 14-15.)

Although BSI has provided supplemental documentation—some of which was produced only in response to Dinosaur's Motion for Sanctions—BSI's production is still deficient.  BSI indicates it has made payments on three loans.   BSI has not produced all necessary documents with respect to any of these loans.

The first loan is a $250,000 loan from BSG.   BSI does not deny that it has produced no documents showing that BSG ever made a $250,000 payment to BSI or otherwise extended credit to BSI warranting a repayment of a loan.  BSI does not contend that no such documents exist.  This omission is a violation of the Court's Order to produce all documents related to the underlying loans.

The second loan is a $250,000 loan from Thompson.  BSI produced only single-page extracts of different highlighted monthly bank statements labeled "Thompson loan to BSI for Paytoo."  (Doc. 122-19)  Each statement shows anonymous transfers without account numbers, with one transfer highlighted from each page.  Dinosaur reasonably argues that it is not possible that a regulated financial institution maintains no record identifying the origin of a $250,000

transfer.   The Court agrees with Dinosaur that BSI's production does not satisfy its obligation to produce "all documents" relating to the debts it repaid with money belonging to Dinosaur.

The third loan is a Focus Bank loan for $1.2 million.  BSI produced a Focus Bank note that referenced three other notes, providing only the loans' dates and amounts.  (Doc. 122-15.) After Dinosaur filed its Motion for Sanctions, BSI produced the underlying Focus Bank notes. (Doc. 125-5.)  Dinosaur argues that this newest production "does not solve the problem of mystery debt," because one of the notes produced is itself a roll up of three other loans from Focus Bank.  (Doc. 125 at p. 7.)  Dinosaur states that it requires the underlying documents establishing the purpose of the debt, especially in light of BSI's claim discussed above that loans given to Mr. Ault for refinancing his farm were for the starting and funding of BSI.  The undersigned agrees.  Dinosaur is entitled to all documentary evidence necessary to establish where its money went and why, as set out in the Court's Order.

Finally, Dinosaur notes that BSI has failed to provide documents upon which its accountant, Mr. Eftink, relied in producing BSI's annual audits.  Dinosaur refers to the affirmation of Mr. Eftink in the preface to the audit that he had based his audit on "evidence supporting the amounts and disclosures in the financial statement."  (Doc. 122-14 at p. 4.)  The Court agrees that Dinosaur is entitled to these documents, which would help elucidate the nature of BSI's debts.

### 2.  Sanctions

Having found that many of BSI's discovery responses are deficient, the undersigned next considers the imposition of sanctions.  Dinosaur requests that the Court dismiss BSI's Amended Counterclaim as a sanction pursuant to Federal Rule of Civil Procedure 37.  BSI argues dismissal of the Amended Counterclaim in its entirety is not a permissible or appropriate sanction.

Federal Rule of Civil Procedure 37(b)(2)—the asserted basis for Dinosaur's motion—provides a non-exclusive list of sanctions that become available when a party "fails to obey an order to provide or permit discovery," and the list includes "dismissing the action or proceeding in whole or in part." *Id.* 37(b)(2)(A)(v).

The Eighth Circuit has made clear that dismissal is a "drastic" discovery sanction. *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1020 (8th Cir. 1999). It is "available only if there is '(1) an order compelling discovery, (2) a willful violation of the order, and (3) prejudice'" to the opposing party. *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (quoting *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014)). And even then, courts should consider "whether a sanction less extreme than dismissal would suffice," unless the noncompliance was "deliberate or in bad faith." *Bergstrom*, 744 F.3d at 576 (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992)).

Here, the undersigned issued an order compelling responses to interrogatories and production of documents, which brings this case within the ambit of Rule 37(b)(2). BSI has violated the Order in part, as discussed in detail above.

For a violation to be "willful," the offending party need only have "acted intentionally as opposed to accidentally or involuntarily." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000) (quoting *Rodgers v. Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998)) (presenting willfulness as a lower standard than bad faith).

The record shows a pattern of voluntary delay on BSI's part. *See Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997) (treating a party's "persistent failure to cooperate and their disregard of" court orders as evidence of willfulness in the context of a dismissal for failure to prosecute). They have promised BSI that some of the documents were on

26

the way and then failed to provide the documents or provided them only after Dinosaur filed its Motion for Sanctions.

In other cases, BSI has provided timely supplemental responses or documents, but the production has been incomplete.  The incomplete nature of some of the responses are obvious; for example, BSI's failure to provide complete tax return information despite the Court's clear directive to do so.  Other deficiencies are less apparent, due to the complex nature of the transactions involved and the breadth of the information requested.  For example, Interrogatory 6 and Request 13 both requested a substantial amount of information involving numerous financial statements and loan documents.  BSI provided a lengthy response to Interrogatory 6 and provided multiple documents responsive to Request 13.

BSI argues that, to the extent Dinosaur has additional questions after receiving BSI's responses, it should have either tendered more targeted interrogatories or requests for production, deposed the corporate representative for the various entities, or requested a meet and confer conference with counsel.  Dinosaur responds that it is not required to continue to seek the same information in new interrogatories or force BSI to provide information by moving for sanctions.

The Court agrees that Dinosaur should not be forced to incur more costs by serving additional interrogatories or deposing corporate representatives to obtain information to which it is clearly entitled.  The undersigned nonetheless believes that the parties could have resolved some of the more complicated disputes discussed herein or at least narrowed these issues, during a meet and confer conference between counsel.  Such efforts also would have aided the Court in determining whether BSI's omissions were willful in the event an agreement was not reached.  In the interest of expediency, however, the Court will not require the parties to confer at this time.

There is no doubt that Dinosaur has suffered prejudice due to BSI's failure to provide complete responses.  Without the financial information Dinosaur seeks, it is unable to collect the judgment this Court has awarded it against BSI.  The unreasonable delay caused by BSI's conduct has already led to a needless waste of time and effort on Dinosaur's part.  Under these circumstances, holding BSI accountable in some way is appropriate.

The undersigned must now determine whether dismissal is the appropriate sanction.  As an initial matter, the Court finds that dismissal of the Counterclaim is an available sanction in this matter.  A district court has broad discretion to impose sanctions for discovery violations pursuant to Rule 37, *see Nat'l Hockey League v. Metro Hockey Club, Inc.,* 427 U.S. 639, 642-43 (1976),  and BSI has cited no authority for the proposition that dismissal of a counterclaim under the circumstances of this case would be improper.

The law does not require the "least onerous sanction available," *Chrysler Corp.*, 186 F.3d at 1022, but it does reserve dismissal for the most "dilatory and contumacious conduct," *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000).  Courts should "weigh [the] need to advance [a] burdened docket against the consequence of irrevocably extinguishing [a] litigant's claim[.]"  *Hutchins*, 116 F.3d at 1260.  If a lesser sanction could effectively punish the violation and deter future violations, *see Chrysler Corp.*, 186 F.3d at 1022, then it is worth considering.

Dinosaur argues that a lesser sanction would be ineffective.   It is true that some of the lesser sanctions would be either ineffective, impractical, or counterproductive.  For example, Dinosaur is not trying to ascertain a single fact that could simply be "taken as established," Fed. R. Civ. P. 37(b)(2)(A)(i), but is attempting to obtain information sufficient to collect on its judgment.  For this reason, there are no "designated matters in evidence" that BSI could be kept

from introducing, *id.* 37(b)(2)(A)(ii), and prohibiting BSI from supporting its counterclaims, *see id.*, would be functionally the same as dismissing the claim entirely.  Finally, "staying further proceedings until the order is obeyed," *id.* 37(b)(2)(A)(iv), would only delay the resolution of BSI's claims, causing further prejudice to Dinosaur and effectively rewarding BSI's behavior.

Dinosaur argues that entry of another order awarding attorneys' fees would be ineffective, as there are already two and neither has been paid.   While it is true BSI has not paid attorneys' fees to date, BSI has appealed this Court's Judgment on Dinosaur's Complaint and accompanying order awarding attorneys' fees.  In the September 2, 2020 Memorandum and Order granting Dinosaur's Motion to Compel, the Court directed Dinosaur to submit documentation in support of its Request for Attorneys' Fees.  (Doc. 92.)  In compliance with the Court's order, Dinosaur filed fee declarations of two of its attorneys (Docs. 94, 94-1, 94-2), to which BSI has filed a Memorandum in Opposition (Doc. 134).  To date, the Court has not awarded  Dinosaur fees in connection with its successful Motion to Compel.  Thus, contrary to Dinosaur's assertion, BSI has not failed to comply with an order directing it to pay attorneys' fees.

The Court declines to dismiss BSI's Counterclaim at this time.   The undersigned cannot say BSI's conduct is so dilatory and contumacious to warrant this most extreme sanction. *Cf. Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (finding that a defendant's "failure to respond to the magistrate judge's discovery order and other orders, failure to comply with pretrial requirements, and failure to attend the final pretrial/settlement conference ... [are] certainly grounds for default judgement.") (citations omitted); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (concluding that a defendant's "total failure to comply with numerous court orders and with ... discovery requests" justified an entry of default judgement

under Rule 37); *U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, No. 17CV275 (PAM/TNL), 2018 WL 1427105, at *4 (D. Minn. Mar. 1, 2018), *R.&R. adopted by*, 2018 WL 1733350 (D. Minn. Apr. 10, 2018) ("SACN has failed to fulfill its discovery obligations, failed to appear at hearings, failed to obtain new representation following the withdrawal of counsel, and failed to attend the required settlement conference. SACN has willfully violated the Federal Rules of Civil Procedure and willfully disregarded this Court's orders.  Furthermore, SACN's lack of participation demonstrates that SACN does not intend to defend itself against U.S. Bank's allegations.  Under the circumstances, SACN's conduct warrants entry of default judgment.").

Here, BSI responded to the Court's Order compelling discovery by providing supplemental answers and documents.  Dinosaur did not challenge every supplemental response, and the Court found that some of the challenged supplemental responses were adequate.  As previously noted, some of the issues raised in the instant Motion could have been resolved or narrowed had Dinosaur attempted to communicate with counsel for BSI.  Thus, the Court will provide BSI one last opportunity to cure the deficiencies set out in this Memorandum and Order. Further, the Court will award Dinosaur its attorneys' fees associated with the filing of the Motion for Sanctions.  Rather than ask Dinosaur to submit additional fee declarations and allowing BSI to object to these declarations, in consideration of the substantial record before the Court related to this issue, the Court is in a position to assess reasonable attorneys' fees.  The Court finds that BSI shall pay Dinosaur $10,000 in attorneys' fees as a sanction for its failure to fully comply with the Court's September 2, 2020 Order.  *See* Fed. R. Civ. P. 37(b)(2)(c).

Accordingly,

IT IS HEREBY ORDERED that Dinosaur's Motion to Compel Documents from Third Parties (Doc. 97) is **granted.**

IT IS FURTHER ORDERED that Third Parties Bancservices Group, Inc., Thompson International LTD, and Theodore Eftink shall produce to Dinosaur **within 5 business days of this Memorandum and Order** all documents within their possession, custody, or control that are requested by the June 25, 2020 Subpoenas.

IT IS FURTHER ORDERED that Dinosaur's Motion to Compel BSI to Respond More Fully to Discovery (Doc. 100) is **granted in part** as set out in this Memorandum and Order.

IT IS FURTHER ORDERED that BSI shall respond more fully to Dinosaur's Interrogatories and Requests for Production as set out in this Memorandum and Order **within 5 business days of this Memorandum and Order**.

IT IS FURTHER ORDERED that Dinosaur's Motion for Sanctions (Doc. 121) is **granted in part** as set out in this Memorandum and Order.

IT IS FURTHER ORDERED that BSI shall cure the deficiencies in its post-judgment discovery responses as set out in this Memorandum and Order **within 5 business days of this Memorandum and Order.**

IT IS FINALLY ORDERED that BSI shall pay Dinosaur $10,000 in attorneys' fees as a sanction for its failure to comply fully with the Court's September 22, 2020 Order.


**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2021.

31